**Case No: 25-5781**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

---

SW NASHVILLE EB OWNER, LLC,

Plaintiff - Appellant

v.

METROPOLITAN GOVERNMENT OF NASHVILLE & DAVIDSON COUNTY, TN; LUCY KEMPF, Executive Director of the Metropolitan Nashville-Davidson County Planning Dept.

Defendants - Appellees.

---

Appeal from the United States District Court of the Middle District of Tennessee
Hon. Aleta A. Trauger, District Judge

---

# APPELLANT'S PRINCIPAL BRIEF

---

W. Scott Sims
R. Mark Donnell, Jr.
Sims Funk, PLC
3102 West End Ave., Suite 1100
Nashville, TN 37203

Luke J. Ellis *
Zev Kusin
Marrs Ellis & Hodge LLP
809 West 12th Street
Austin, Texas 78701
* Admission pending.

Jonathan M. Houghton
Bridget F. Conlan
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
(202) 888-6881
JHoughton@pacificlegal.org
BConlan@pacificlegal.org

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit Case Number: 25-5781 Case Name: SW Nashville EB Owner LLC v. Metro. G

Name of counsel: Jonathan M. Houghton

Pursuant to 6th Cir. R. 26.1, Plaintiff-Appellant SW Nashville EB Owner LLC
*Name of Party*
makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

None to the knowledge of Appellant's counsel.

CERTIFICATE OF SERVICE

I certify that on Dec. 23, 2025 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Jonathan M. Houghton
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

## Table of Contents

Corporate Disclosure Statement ........ i
Table of Authorities ........ iv
Statement in Support of Oral Argument ........ viii
Statement of Jurisdiction ........ 1
Statement of the Issues ........ 2
Statement of the Case ........ 2
A. Facts ........ 3
1. SW Nashville files two as-of-right permits ........ 3
2. Metro refuses to review or process the permits indefinitely ........ 4
3. SW Nashville's concrete injury ........ 7
B. Procedural History ........ 7
Summary of the Argument ........ 11
Standard of Review ........ 16
Argument ........ 17
I. SW Nashville's Claims Were Ripe for Adjudication ........ 18
A. Ripeness, generally ........ 19
B. Metro has decided that SW Nashville cannot have a building permit ........ 22
C. Metro admitted that SW Nashville's claims were ripe ........ 28
II. The District Court's Ripeness Determination Must Be Reversed ........ 29
A. Metro made a final decision ........ 30
B. The cases relied upon by the district court are not applicable ........ 37
C. The district court failed to address Metro's alleged lack of authority to prohibit development ........ 38
Conclusion ........ 39
Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements ........ 41

Certificate of Service ............................................................................ 42
Designation of Relevant Documents...................................................... 43

## Table of Authorities

**Page(s)**

**Cases**

*Am. Canoe Ass'n v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536 (6th Cir. 2004) ........ 17

*Ammex, Inc. v. Cox*, 351 F.3d 697 (6th Cir. 1993) ........ 16

*Anderson County v. Remote Landfill Services, Inc.*, 833 S.W.2d 903 (Tenn. Ct. App. 1991) ........ 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 17

*State ex rel. AWMS Water Sols., L.L.C. v. Mertz*, 162 Ohio St. 3d 400 (Ohio 2020) ........ 37

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 17

*Biden v. Texas*, 597 U.S. 785 (2022) ........ 22

*Borror Prop. Mgmt., LLC v. Oro Karric N., LLC*, 979 F.3d 491 (6th Cir. 2020) ........ 29

*Carman v. Yellen*, 112 F.4th 386 (6th Cir. 2024) ........ 16, 29

*Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021) ........ viii, 30

*Cienega Gardens v. United States*, 67 Fed. Cl. 434 (2005), *vacated on other grounds*, 503 F.3d 1266 (Fed. Cir. 2007) ........ 36

*Clayland Farm Enters. v. Talbot Cnty.*, 672 F. App'x 240 (4th Cir. 2016) ........ 36

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ........ 27

*Corn v. City of Lauderdale Lakes*, 816 F.2d 1514 (11th Cir. 1987) ........ 37

*Dayton Area Chamber of Commerce v. Kennedy*,
147 F.4th 626 (6th Cir. 2025) .......... 17

*Father Ryan High Sch., Inc. v. City of Oak Hill By & Through Oak Hill Bd. of Zoning Appeals*,
774 S.W.2d 184 (Tenn. Ct. App. 1988) .......... 23, 39

*First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cnty.*,
482 U.S. 304 (1987) .......... 16, 33, 34

*Friends of Tims Ford v. TVA*,
585 F.3d 955 (6th Cir. 2009) .......... 27, 28

*Harrell v. Hamblen Cnty. Quarterly Court*,
526 S.W.2d 505 (Tenn. Ct. App. 1975) .......... 23

*Hensley v. City of Columbus*,
557 F.3d 693 (6th Cir. 2009) .......... 28

*Horne v. Dep't of Agric.*,
576 U.S. 350 (2015) .......... 20, 35

*Kelo v. City of New London, Conn.*,
545 U.S. 469 (2005) .......... 39

*Kirby v. N. Carolina Dep't of Transp.*,
239 N.C. App. 345 (N.C. App. Ct. 2015) .......... 13

*Kirby v. N. Carolina Dep't of Transp.*,
368 N.C. 847 (2016) .......... 13, 14, 24

*Kiser v. Reitz*,
765 F.3d 601 (6th Cir. 2014) .......... 16, 17

*Knick v. Twp. of Scott*,
588 U.S. 180 (2019) .......... 20, 26, 33

*Lilly Invs. v. City of Rochester*,
674 F. App'x 523 (6th Cir. 2017) .......... 25

*Loretto v. Teleprompter Manhattan CATV Corp.*,
458 U.S. 419 (1982) .......... 35

*Lucas v. S.C. Coastal Council*,
505 U.S. 1003 (1992) .......... 19

*MacDonald v. Gen. Motors Corp.*,
110 F.3d 337 (6th Cir. 1997) .................... 28

*MacDonald, Sommer & Frates v. Yolo Cnty.*,
477 U.S. 340 (1986) .................... 19, 21

*Marusic Liquors, Inc. v. Daley*,
55 F.3d 258 (7th Cir. 1995) .................... 36

*Mata v. N. Carolina Dep't of Transp.*,
No. 217PA24-1, 2025 WL 3560052, 2025 N.C. LEXIS 1075
(N.C. Dec. 12, 2025) .................... 34

*Nat. Env't Dev. Ass'n's Clean Air Project v. E.P.A.*,
752 F.3d 999 (D.C. Cir. 2014) .................... 22

*NRA of Am. v. Magaw*,
132 F.3d 272 (6th Cir. 1997) .................... 16

*Pakdel v. City & Cnty. of San Francisco*,
952 F.3d 1157 (9th Cir. 2020), *cert. granted, judgment vacated*, 594 U.S. 474 (2021) .................... 21, 25, 31

*Pakdel v. City and County of San Francisco*,
594 U.S. 474 (2021) .................... 20, 21

*Palazzolo v. Rhode Island*,
533 U.S. 606 (2001) .................... 21, 25

*Penn Cent. Transp. Co. v. City of New York*,
438 U.S. 104 (1978) .................... 19

*Pennsylvania Coal Co. v. Mahon*,
260 U.S. 393 (1922) .................... 19, 35

*Peters v. Fair*,
427 F.3d 1035 (6th Cir. 2005) .................... 18

*San Diego Gas & Elec. Co. v. City of San Diego*,
450 U.S. 621 (1981) .................... 30, 34

*Skull Valley Band of Goshute Indians v. Nielson*,
376 F.3d 1223 (10th Cir. 2004) .................... 37

*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702 (2010) .................... 30

*Suitum v. Tahoe Reg'l Plan. Agency*,
520 U.S. 725 (1997) .......... 21

*T&W Holding Co., L.L.C. v. City of Kemah, Texas*,
No. 24-40679, 2025 WL 3248185, 2025 U.S. App. LEXIS 30667 (5th Cir. Nov. 21, 2025) .......... 36

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
938 F.2d 153 (9th Cir. 1991) .......... 27

*Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*,
535 U.S. 302 (2002) .......... 16, 24, 27, 28

*Walling v. Helmerich & Payne*,
323 U.S. 37 (1944) .......... 33

*Warren v. City of Athens*,
411 F.3d 697 (6th Cir. 2005) .......... 19

*Warth v. Seldin*,
422 U.S. 490 (1975) .......... 16, 27

*Williamson Cnty. v. Hamilton Bank of Johnson City*,
473 U.S. 172 (1985) .......... 20, 21

*Woodruff v. Trapnall*,
51 U.S. 190 (1850) .......... 22

**Statutes**

28 U.S.C. § 1291 .......... 1

28 U.S.C. § 1331 .......... 1

**Rules of Court**

Fed. R. App. P. 4(a)(1)(A) .......... 1

Fed. R. Civ. P. 12(b)(6) .......... 1, 8

## Statement in Support of Oral Argument

Pursuant to 6 Cir. R. 34(a), Appellant SW Nashville EB Owner, LLC, respectfully requests oral argument. This case raises a significant issue of constitutional importance: determining when the government's de facto, indefinite prohibition upon the development of private property, without sufficient process, presents ripe claims for adjudication under the Fifth and Fourteenth Amendments. "Private property is indispensable to the promotion of individual freedom" and liberty, *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147 (2021), and as such, the justiciability of these constitutional claims is a consequential predicate determination and one that warrants oral argument to assist the Court in making its decision.

## Statement of Jurisdiction

This case was originally filed on May 4, 2024, in the Tennessee Circuit Court of Davidson County. It was removed to the U.S. District Court for the Middle District of Tennessee on June 10, 2024. *Notice of Removal, RE 1, Page ID # 1–19.* The district court had federal question jurisdiction over Appellant SW Nashville EB Owner's constitutional claims pursuant to 28 U.S.C. § 1331.

On March 20, 2025, the district court dismissed Appellant's Second Amended Complaint. *Entry of Judgment, RE 47, Page ID # 297.* It held that certain of Appellant's claims were not ripe for adjudication, and with respect to the remainder, it granted Appellees' motions to dismiss pursuant Fed. R. Civ. P. 12(b)(6). *Memorandum Decision, RE 45, Page ID # 269–94.* The Appellant's motion for reconsideration was denied on August 7, 2025. *Order Denying Reconsideration, RE 52, Page ID # 333–35.*

Appellant timely filed its Notice of Appeal on September 5, 2025, within the 30 days allowed by Fed. R. App. P. 4(a)(1)(A). *Notice of Appeal, RE 53, Page ID # 336–37.* This Court has jurisdiction under 28 U.S.C. § 1291. Pursuant to this Court's Order of October 30, 2025, the time

within which to file Appellant's Opening Brief was extended to and including December 23, 2025. *Mediation Letter 6th Circuit RE 15, Page # 1.*

**Statement of the Issues**

This appeal presents a single question regarding the proper evaluation of jurisdictional ripeness with respect to constitutional property rights claims. The issue presented for de novo review is:

1. Whether the government's prohibition of a legally permissible, as-of-right development of private property, for an indefinite period of time, alleges justiciable regulatory takings and due process claims?

**Statement of the Case**

Appellant SW Nashville EB Owners, LLC (SW Nashville) has been prohibited from developing its fee property since 2022. Specifically, the Defendants-Appellees[1] (collectively, Metro) have refused to review or process permit applications that are compliant with local zoning and as-of-right. Metro's refusal has nothing to do with the permits themselves.

---

[1] The Defendants-Appellees are the Metropolitan Government of Nashville and Davidson County and Lucy Kempf, Executive Director of the Metropolitan Nashville-Davidson County Planning Department.

Instead, Metro has prohibited development indefinitely because Metro may, or may not, need to condemn a portion of SW Nashville's property by eminent domain at some undetermined date in the future. Until that day comes (if it ever does), Metro's land banking has left SW Nashville's property idle, without any economic use, and unsaleable. The facts as alleged in the Second Amended Complaint and the Procedural History are as follows:

A. Facts

In March 2022, SW Nashville bought the property located at 186 North 1st Street in Nashville, Tennessee. *Second Amended Complaint (SAC), RE 44, Page ID # 258.* It is an approximately 4-acre development site containing a single vacant, dilapidated, and uninhabitable building. *Id., at Page ID # 259.* The plan was to demolish the building and redevelop the property into a multi-family residential project with 370 units. *Ibid.*; *July 26, 2022 letter to Kempf (Kempf letter), RE 24-2, Page ID # 103.*

*1. SW Nashville files two as-of-right permits*

In April 2022, SW Nashville started the process by filing an application for a grading permit. *SAC, RE 44, Page ID # 259; October 13,*

*2022 letter to Mendes (Mendes Letter), RE 13-1, Page ID # 75.* That was followed by a permit application for final site plan approval on June 2, 2022. *Ibid.* The proposed development was "as-of-right," meaning that it was wholly consistent with the property's "MUG-A" zoning (which allows for a mix of residential, retail, and office uses in a manner designed to create walkable neighborhoods) and it required no variances, special permits or discretionary approvals. *Ibid.*; *Kempf Letter, RE 23-2, Page ID # 103.* Based upon past experience, SW Nashville expected to start construction within twelve months and that the development would be complete by July 2025. *SAC, RE 44, Page ID # 259–60.*

*2. Metro refuses to review or process the permits indefinitely*

On June 14, 2022, the Zoning Administrator for Appellee Metro told SW Nashville that an indefinite hold had been placed on its permit applications. *SAC, RE 44, Page ID # 260; Mendes Letter, RE 13-1, Page ID # 75; Kempf Letter, RE 24-2, Page ID # 103; June 2022 emails to, and from, Nashville Planning Dept. (Planning emails), RE 24-1, Page ID # 100–01.* On June 29, 2022, SW Nashville received an email from Appellee Metropolitan Nashville-Davidson County Planning Department (Planning) and the Nashville Department of Transportation:

> In response to your request for building permit submission to the Metropolitan Codes Department, at this time Metro Government is working in partnership with the Tennessee Department of Transportation (TDOT) to assess possible routes for a planned major roadway in the vicinity of your property. Depending on the outcome of that assessment, the Metropolitan Government may need to acquire right of way interests along the selected route and must defer review of building permits on potentially affected properties until the assessment is complete. The Metropolitan Government will be in contact with you as soon as the assessment and planning processes are complete to discuss the findings and next steps.

*SAC, RE 44, Page ID # 260; Planning Emails, RE 24-1, Page ID # 100.*

The government's refusal to process SW Nashville's as-of-right permit application had nothing to do with the development itself. The project is fully compliant with the zoning code. *SAC, RE 44, Page ID # 259, 262; Mendes Letter, RE 13-1, Page ID # 75; Kempf Letter, RE 23-2, Page ID # 103.* Instead, development was prohibited indefinitely because of the possibility, at some uncertain date in the future, that SW Nashville's property, or some portion of its property, may be taken by eminent domain to construct a new "major roadway." *SAC, RE 44, Page ID # 260; Planning Emails, RE 24-1, Page ID # 100.*

SW Nashville has made continuous efforts to convince Metro to rescind its indefinite hold upon SW Nashville's as-of-right

development. *SAC, RE 44, Page ID # 260–61; Mendes Letter, RE 13-1, Page ID # 75–76; Kempf Letter, RE 24-2, Page ID # 103–05*. SW Nashville's local zoning counsel filed a formal objection on July 26, 2022. *Ibid.* On repeated occasions, SW Nashville tried to speak with, and work with, employees of Metro. *Ibid.* In October 2023, SW Nashville wrote a letter to Metro's Chief Development Officer imploring him to help; but despite a subsequent meeting with him, the indefinite hold remained in place. *SAC, RE 44, Page ID # 260–61; Mendes Letter, RE 13-1, Page ID # 75–76.*

On April 2, 2024, Appellee Metro notified SW Nashville of the potential condemnation of its property by eminent domain. *SAC, RE 44, Page ID # 263.* Nevertheless, no condemnation has occurred and SW Nashville has not been informed if condemnation will happen, or when it will happen, or what part of its property will be impacted. *SAC, RE 44, Page ID # 263–64; Mendes Letter, RE 13-1, Page ID # 75.* SW Nashville's as-of-right permit applications remain subject to Metro's indefinite prohibition.

*3. SW Nashville's concrete injury*

As a result, SW Nashville has incurred, and continues to incur, substantial damages. The prohibition has forced this property into limbo, stuck in time as an undevelopable development site, with no more than a single vacant, dilapidated, and uninhabitable building. *SAC, RE 44, Page ID # 259, 261, 263, 265; Mendes Letter, RE 13-1, Page ID # 75–76.* It has no economic use and can earn no income. *Ibid.* But its expenses continue and the property's carrying costs are approximately $200,000 per month, not including taxes and lost revenue. *SAC, RE 44, Page ID # 259.* From the June 2022 indefinite hold until the writing of this brief, it is equal to approximately $8,200,000 and counting. Considering all of the above, the indefinite prohibition has made the property unsaleable. SW Nashville could not cut its losses even if it wanted to.

B. <u>Procedural History</u>

SW Nashville filed its complaint in the Tennessee Circuit Court of Davidson County on May 4, 2024. *Notice of Removal, RE 1, Page ID # 4-14.* It alleged that Metro's indefinite hold upon its as-of-right development permit was an unconstitutional regulatory taking. *Ibid.* It further alleged that Metro's actions violated substantive due process,

procedural due process, and the Equal Protection Clause. *Ibid.* All of SW Nashville's claims were filed under both the U.S. Constitution and the Tennessee Constitution. *Ibid.*

Metro removed this matter to the U.S. District Court for the Middle District of Tennessee. *Ibid.* Thereafter, SW Nashville filed a First Amended Complaint. *First Amended Complaint, RE 13, Page ID # 63–76.*

On August 26, 2024, Defendants-Appellees moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6). *Motion to Dismiss of Metro and Planning, RE 24, Page ID # 96–105; Motion to Dismiss of Kempf, RE 26, Page ID # 120–22.* Appellees Metro and Planning argued that SW Nashville's causes of action were barred by the statute of limitations, that its substantive due process and equal protection claims were insufficiently alleged, and that its state law claims must fail because there is no private right of action under the Tennessee Constitution. *Memo. in support of Motion to Dismiss, RE 25, Page ID # 106–119.* Appellee Kempf made the same arguments and additionally claimed that she cannot be held liable personally and has qualified immunity for her official actions. *Memo. in support of Motion to Dismiss, RE 27, Page ID # 123–132.*

Before the motions to dismiss were decided, SW Nashville filed a Second Amended Complaint with the district court's permission. *Agreed Order, RE 43, Page ID # 253–56; SAC, RE 44, Page ID # 257–67.* It clarified that SW Nashville's regulatory takings claim sought liability against Appellee Metro only and not Appellee Kempf, and that SW Nashville's constitutional claims against Appellee Kempf were based upon the U.S. Constitution but not the Tennessee Constitution. *Exhibit 1, Motion for Leave, RE 39, Page ID # 195.* Otherwise, the Second Amended Complaint was identical to the First. *Ibid.* Defendants'-Appellees' motions to dismiss, and all associated briefings, were then deemed to apply to SW Nashville's Second Amended Complaint. *Agreed Order, RE 43, Page ID # 254–55.*

By Order dated March 20, 2025, the district court determined sua sponte that SW Nashville's regulatory takings claim, substantive due process claim, and procedural due process claim were not jurisdictionally ripe for adjudication. *Memorandum Decision, RE 45, Page ID # 282–93.* Utilizing the same ripeness evaluation for all, it held that "there has been no final decision in this case—the plaintiff's Application is on hold." *Id., at Page ID # 288.* With regard to SW Nashville's equal protection claim,

the district court held that SW Nashville did not sufficiently allege that it was a class of one or that Metro was motivated by animus or ill will. *Id., at Page ID # 279–82.* Lastly, the court determined that there was no private right of action under the Tennessee Constitution for SW Nashville's substantive due process, procedural due process, and equal protection claims. *Id., at Page ID # 278.* SW Nashville's Second Amended Complaint was dismissed. *Order Dismissing Case, RE 46, Page ID # 295–96.*

SW Nashville filed a motion for reconsideration on April 16, 2025. *Motion for Reconsideration, RE 48, Page ID # 298–14.* It argued, inter alia, that the district court's sua sponte ripeness determination was in error. *Ibid.* By Order dated August 7, 2025, the Appellant's motion was denied. *Order Denying Reconsideration, RE 52, Page ID # 333–35.* A Notice of Appeal was timely filed on September 4, 2025.[2] *Notice of Appeal, RE 53, Page ID # 336–37.*

---

[2] SW Nashville is not appealing the dismissal of its equal protection claim under the Fourteenth Amendment or the dismissal of its substantive due process, procedural due process, and equal protection claims under the Tennessee Constitution.

## Summary of the Argument

Jurisdictional ripeness is a relatively modest requirement. Once the government has committed to a position that causes the property owner to suffer a concrete injury, the owner's takings and due process claims are ripe for determination. In this case, Metro has prohibited all economic use on SW Nashville's private property by refusing, indefinitely, to review or process SW Nashville's as-of-right permit applications. As a result, for the last 41 months and counting, Metro has transformed SW Nashville's development property into something that is unbuildable, unsellable, and worthless; and currently exists only to cost SW Nashville millions of dollars per year until either SW Nashville eventually goes bankrupt or Metro rescinds its development prohibition. The district court's sua sponte determination that this was not a ripe claim for adjudication was in error and must be reversed.

In 2022, SW Nashville spent a considerable sum of money to buy a 4-acre development site in Nashville. The property "as is" (and as it remains) was not economically viable and, therefore, within a few months of purchase, SW Nashville had filed permits to redevelop the property and build a multi-family project as-of-right. The development is

undisputedly consistent with the existing zoning. It requires no variances, special permits, or discretionary review. Under Tennessee law, the government was legally required to grant the approval to build.

Instead, Metro refused to review or process SW Nashville's permit applications. Metro's indefinite prohibition on development has nothing to do with SW Nashville's multi-family residential project. There were no concerns about the development's zoning compliance or its impact. Rather, Metro's regulatory action is targeted at this one specific property because the Tennessee Department of Transportation may, or may not, need to condemn some portion of SW Nashville's property for a roadway at some undetermined date in the future.

It does not take much effort to see that Metro is land banking SW Nashville's property. There is no certainty about the use of eminent domain: *if*, *when*, and *for what portion* of SW Nashville's property are all unknown. But regardless, Metro is holding down the value of SW Nashville's property just in case, acting on the belief that the just compensation for an idle property that has been stripped of all economic use will be less than the just compensation for a newly built multi-family development. Metro's indefinite prohibition of a lawful and zoning

compliant development has turned SW Nashville's property into a multi-million-dollar sinkhole that continues to accrue expenses but is incapable of being developed, or having any viable economic use, or even being sold. No matter the circumstances, the Constitution does not allow the government to deprive a private property owner of all economic use.

The facts here are not far removed from a North Carolina Supreme Court case in which development was prohibited for an unlimited period of time because of a potential future eminent domain action for highway improvements. *Kirby v. N. Carolina Dep't of Transp.*, 368 N.C. 847, 848 (2016). Much like here, it was a "cost-controlling mechanism that employs the power of eminent domain, allowing NCDOT to foreshadow which properties will eventually be taken for roadway projects and in turn, decrease the future price the State must pay to obtain those affected parcels." *Id.* at 852.

First, the North Carolina Court of Appeals held that the government's recording of "corridor maps" created a ripe regulatory takings claim because of "potentially long-lasting statutory restrictions that constrain Plaintiffs' ability to freely improve, develop, and dispose of their own property." *Kirby v. N. Carolina Dep't of Transp.*, 239 N.C.

App. 345, 367 (N.C. App. Ct. 2015). Then, the North Carolina Supreme Court held that "by recording the corridor maps at issue here, which restricted plaintiffs' rights to improve, develop, and subdivide their property for an indefinite period of time, NCDOT effectuated a taking of fundamental property rights." *Kirby*, 368 N.C. at 856.

Similarly, SW Nashville filed suit alleging, inter alia, that Metro's refusal to review or process its as-of-right development project was an unconstitutional taking that was contrary to the Fifth Amendment, and a violation of substantive due process and procedural due process contrary to the Fourteenth Amendment.

When the district court later dismissed SW Nashville's Second Amended Complaint on ripeness grounds, it was sua sponte and without the benefit of briefing or oral argument. It held that Metro's indefinite prohibition was not an actionable final decision, but instead, SW Nashville's permit applications were merely "on hold." In making this determination, the district court did not dispute that a decision had been made, so much as the court was awaiting the possibility that Metro would eventually rescind its development prohibition or utilize eminent domain.

To the contrary, irrespective of what may or may not happen in the future, Metro has committed to a position regarding SW Nashville's as-of-right permit applications and SW Nashville has suffered a concrete injury as a result. Distinct from a failure to decide or a normal administrative delay, Metro gave full consideration to the existing zoning laws that were applicable to SW Nashville's permit applications and then decided that no permits would be issued. Development will be prohibited indefinitely. There is no further administrative action that SW Nashville can take, and its sole remedy is a lawsuit. Therefore, SW Nashville has a concrete, redressable injury that was caused by Metro's decision, and this case is ripe for determination.

In addition to denying SW Nashville its day in court, the district court's decision has far-reaching consequences. It allows the government to place disfavored permit applications "on hold" indefinitely and leaves property owners without legal redress by simply allowing for the possibility that a development prohibition, applicable only to a single property, might be rescinded someday in the future. In deeming such prohibitions to be unripe for determination, the district court's decision also denies redress for temporary takings, contrary to the Supreme

Court. *See*, *e.g.*, *First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cnty.*, 482 U.S. 304 (1987), *and Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 535 U.S. 302 (2002).

The district court's sua sponte ripeness determination should be reversed and SW Nashville's regulatory takings claim (under both the Fifth Amendment and the Tennessee Constitution) and its substantive due process and procedural due process claims (under the Fourteenth Amendment) should be remanded to the district court for further proceedings.

**Standard of Review**

The Sixth Circuit "review[s] issues of justiciability, such as ripeness, *de novo*." *Ammex, Inc. v. Cox*, 351 F.3d 697, 706 (6th Cir. 1993) (citing *NRA of Am. v. Magaw*, 132 F.3d 272, 278 (6th Cir. 1997)); *Carman v. Yellen*, 112 F.4th 386, 398 (6th Cir. 2024) ("We review de novo a district court's grant of a motion to dismiss for lack of subject matter jurisdiction.") (quoting *Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014)).

In determining jurisdiction, the court must take all allegations in the complaint as true and resolve all inferences in the plaintiff's favor. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("For purposes of ruling on

a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."); *Dayton Area Chamber of Commerce v. Kennedy*, 147 F.4th 626, 632 (6th Cir. 2025) (same); *Am. Canoe Ass'n v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 540 (6th Cir. 2004) (same). Similar to any other motion to dismiss, the allegations supporting jurisdiction only need to be plausible on their face. *Kiser*, 765 F.3d at 606 (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009)); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–57 (2007).

## Argument

SW Nashville submitted valid permit applications that were as-of-right and complied with all applicable zoning laws. These must-issue permits should have been granted and Metro had no discretion to do otherwise. Metro's decision to impose an indefinite development prohibition upon SW Nashville's property, without the legal or statutory authority to do so, was a de facto final decision that rendered SW Nashville's action ripe for determination. The court knows how far the government's regulatory action goes and SW Nashville has suffered a concrete injury.

Yet, SW Nashville is stuck in property rights purgatory. Its property remains undevelopable, unsaleable, and devoid of any viable economic use as it now approaches its fourth year of being subject to Metro's indefinite hold. At this point, the property can do nothing but lose large amounts of money for its owner. However, SW Nashville has been denied its day in court and cannot argue that its constitutional rights have been violated because the district court wrongly held that because Metro may (or may not) one day choose to take SW Nashville out of purgatory, there is no ripe claim to be had. The court's decision was in error and must be reversed.

## I. SW Nashville's Claims Were Ripe for Adjudication

SW Nashville alleged that Metro's indefinite development prohibition was an unconstitutional regulatory taking and a violation of substantive due process and procedural due process. In the Sixth Circuit, when the due process claims are ancillary to the takings claim and arise from the same operative facts, the ripeness determination is the same for all and follows the requirements for a takings claim. *Peters v. Fair*, 427 F.3d 1035, 1037 (6th Cir. 2005) ("[C]laims for violations of substantive due process and procedural due process claims ancillary to a takings

claim are also subject to this [same] ripeness requirement.") (citing *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005)). Accordingly, for each of these claims herein, the ripeness evaluation is grounded in whether the government has made a final determination.

A. Ripeness, generally

To evaluate whether a government regulatory action effects an unconstitutional taking under the Fifth Amendment, the court must decide "how far is too far?" *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922) ("The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking."). The destruction of all economic use is certainly "too far" as a matter of law. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992). Short of that, the court must conduct an ad hoc evaluation of all relevant facts and circumstances including the economic impact of the regulatory action, the disruption of the owner's reasonable investment backed expectations, and the regulatory action's character. *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978).

In either case, to make this determination the court needs to know "how far" the government's regulatory action goes. *MacDonald, Sommer*

& *Frates v. Yolo Cnty.*, 477 U.S. 340, 348 (1986). That is where the principle of ripeness comes in. Knowing "how far" requires finality by the government as to how the challenged government action applies to the property at issue. Otherwise, the court is unable to make its necessary determination.

The ripeness requirement is often traced to the Supreme Court's decision in *Williamson County v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), *overruled in part by Knick v. Twp. of Scott*, 588 U.S. 180, 202 (2019). Therein, the Court held that the government must have reached a "final, definitive position" on the regulation being challenged.[3] *Williamson County*, 473 U.S. at 191.

But at the same time, final does not mean formal. Property rights cannot be subject to government manipulation, *Horne v. Dep't of Agric.*, 576 U.S. 350, 365 (2015), nor should property owners be forced to endure unreasonable procedural obstacles to protect their constitutional rights. Thus, in *Pakdel v. City and County of San Francisco*, the Supreme Court recognized that ripeness is a "relatively modest" requirement. 594 U.S.

[3] This holding was left in place by *Knick*. 588 U.S. at 187–88 ("Knick does not question the validity of this finality requirement, which is not at issue here.")

474, 478 (2021) (per curiam). A *de facto* showing is all that is needed, *id.* at 479, that "there is no question about how the regulations at issue apply to the particular land in question." *Id.* at 478 (quoting *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 739 (1997)); *see Macdonald*, 477 U.S. at 359 (White, J., dissenting) (Finality is about ensuring a concrete injury and "nothing in our cases, however, suggests that the decisionmaker's definitive position may be determined only from explicit denials of property-owner applications for development.").

It is enough that "the permissible uses of the property are known to a reasonable degree of certainty." *Palazzolo v. Rhode Island*, 533 U.S. 606, 620 (2001); *MacDonald*, 477 U.S. at 351 (finality ascertains "the extent of permitted development"). "[It] ensures that a plaintiff has actually been injured by the Government's action and is not prematurely suing over a hypothetical harm." *Pakdel*, 594 U.S. at 479; *Williamson County*, 473 U.S. at 193 (exhaustion is not required because the goal is only to ensure that "the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury").

Lastly, de facto finality means that the government's position is known, not that it is permanent. No legislative or executive action is

forever beyond change. *See Woodruff v. Trapnall*, 51 U.S. 190, 208 (1850) ("It is a principle controverted by no one, that, on general questions of policy, one legislature cannot bind those which shall succeed it."). But that possibility does not preclude ripeness or finality. *See*, *e.g.*, *Biden v. Texas*, 597 U.S. 785, 808–09 (2022) ("The October 29 Memoranda were therefore final agency action for the same reasons that the June 1 Memorandum was final agency action: Both marked the consummation of the agency's decisionmaking process and resulted in rights or obligations being determined.") (cleaned up); *Nat. Env't Dev. Ass'n's Clean Air Project v. E.P.A.*, 752 F.3d 999, 1006–07 (D.C. Cir. 2014) ("An agency action may be final even if the agency's position is 'subject to change' in the future.").

### B. Metro has decided that SW Nashville cannot have a building permit

SW Nashville's Second Amended Complaint plausibly alleged that its takings claim and its due process claims are ripe for adjudication. Its permit applications for multi-family development are as-of-right and consistent with the local zoning regulation. *SAC, RE 44, Page ID # 259, 262; Mendes Letter, RE 13-1, Page ID # 75; Kempf Letter, RE 23-2, Page ID # 103.* They required no variances, special permits, or discretionary

review. *Ibid.* Under the circumstances, Metro was required to grant the development permits. *See Anderson County v. Remote Landfill Services, Inc.*, 833 S.W.2d 903, 910 (Tenn. Ct. App. 1991) ("In view of the trial court's holding that the Defendant had complied with all of the requirements of the Zoning Ordinance . . . nothing remains to be done except the issuance of a permit, and that cannot be arbitrarily denied."); *Father Ryan High Sch., Inc. v. City of Oak Hill By & Through Oak Hill Bd. of Zoning Appeals*, 774 S.W.2d 184, 189 (Tenn. Ct. App. 1988) (the "denial of a zoning permit which meets all the requirements of the ordinance when there is no valid ground for denial is arbitrary and unreasonable") (citing 101 C.J.S. *Zoning* § 224 (1958)); *Harrell v. Hamblen Cnty. Quarterly Court*, 526 S.W.2d 505, 509 (Tenn. Ct. App. 1975) ("The granting or withholding of a permit is not a matter of arbitrary discretion. If the applicant complies with the requirements of the ordinance, he is entitled to his permit.").

However, Metro made a de facto decision to refuse to process or review SW Nashville's as-of-right permit applications, it placed the permit applications into an indefinite hold, and it prohibited all development. *SAC, RE 44, Page ID # 260; Mendes Letter, RE 13-1, Page ID # 75; Kempf Letter, RE 24-2, Page ID # 103; Planning emails, RE 24-*

*1, Page ID # 100–01*. Metro informed SW Nashville of the prohibition both orally and in writing. *Ibid.*

The prohibition was not area-wide but specific to this property. *Ibid*. Metro has expressed no concerns about the impact of SW Nashville's development and it was undisputed that all zoning requirements had been complied with. *Ibid.* Instead, Metro used their municipal power for land banking. It refused to allow as-of-right development permits to proceed in order to keep the property from becoming more valuable, in case Metro needed to use eminent domain in the future. *See Kirby*, 368 N.C. at 848 (describing a similar action as a "cost-controlling mechanism"); *see also Tahoe-Sierra Pres. Council, Inc.*, 535 U.S. at 340 (noting that the government is entitled to diminished protection when a moratorium is directed at "a permit for a single parcel").

Metro declined to rescind the prohibition on development despite repeated and continued efforts by SW Nashville. *SAC, RE 44, Page ID # 260–61; Mendes Letter, RE 13-1, Page ID # 75–76; Kempf Letter, RE 24-2, Page ID # 103–05.* SW Nashville sent a formal objection to the Metro Planning Department on July 26, 2022, stating that the indefinite prohibition was illegal and improper. *Kempf Letter, RE 24-2, Page ID*

*# 103–05*. No response was received. *Mendes Letter, RE 13-1, Page ID # 75*. SW Nashville attempted to engage officials with the Nashville DOT and Nashville Planning Department and got nothing but vagaries and excuses in return. *Ibid*. On October 13, 2023, SW Nashville sent a letter to Bob Mendes, Metro Nashville's Chief Development Officer, outlining these details and concerns and requesting that the permits be granted, as they must be. *Mendes Letter, RE 13-1, Page ID # 75–76*. That led to a November 2023 meeting with Mr. Mendes but there was no resolution. *SAC, RE 44, Page ID # 261*. SW Nashville was not told if or when a future eminent domain project involving their property would be funded. *Mendes Letter, RE 13-1, Page ID # 75*.

As the prohibition now heads towards its 42nd month, there is no action that SW Nashville can take. It can only continue to be subject to Metro's indefinite development hold.[4] *See Pakdel v. City & Cnty. of San*

[4] Because there is no administrative action left for SW Nashville to take, the concepts of futility and exhaustion have no real place here. *See also, e.g.*, *Pakdel*, 594 U.S. at 480 ("[A]dministrative exhaustion of state remedies is not a prerequisite for a takings claim when the government has reached a conclusive position."); *Palazzolo*, 533 U.S. at 626 ("[F]ederal ripeness rules do not require the submission of further and futile applications with other agencies."); *see Lilly Invs. v. City of Rochester*, 674 F. App'x 523, 527 (6th Cir. 2017) (the case was ripe based

*Francisco*, 952 F.3d 1157, 1172 (9th Cir. 2020), *cert. granted, judgment vacated*, 594 U.S. 474 (2021) (Bea, J., dissenting) (Because "there is nothing more that the Plaintiffs may now do," "[b]y any common understanding of the word, the City's decision is final."). Except, of course, for the filing of a lawsuit as SW Nashville did here.

SW Nashville has suffered a concrete injury as the result of affirmative government action. Metro's refusal to review or process SW Nashville's as-of-right development permit has left its property undevelopable, unsaleable, and without any economic value. *SAC, RE 44, Page ID # 259, 261, 263, 265; Mendes Letter, RE 13-1, Page ID # 75–76.* Compounding the continued lack of income, SW Nashville remains responsible for substantial carrying costs of roughly $200,000 per month, not including taxes and lost revenue. *SAC, RE 44, Page ID # 259.* Just doing the math, over the duration of the prohibition (and counting), approximately $8,200,000 has been lost.

Therefore, SW Nashville's constitutional claims are ripe for determination. *Knick*, 588 U.S. at 189 ("[A] property owner has a claim

upon the "impasse" between the owner and government regarding the permit).

for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it."); *see Tahoe-Sierra Pres. Council, Inc.,* 535 U.S. at 341 ("It may well be true that any moratorium that lasts for more than one year should be viewed with special skepticism."); *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 938 F.2d 153, 156–57 (9th Cir. 1991) (the government's 32-month moratorium was ripe for determination). The local zoning laws are known, the government's position on SW Nashville's permit applications is known, the injury is known; and as such, the court must exercise its "virtually unflagging" obligation to hear and decide justiciable constitutional claims. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).[5]

[5] If this Court were to disagree, this matter should be remanded to the district court for further factual development. Particularly when considering that the district court's determination was sua sponte and without the benefit of briefing or argument. *See Warth*, 422 U.S. at 501–02 ("[I]t is within the trial court's power to allow or to require the plaintiff to supply . . . further particularized allegations of fact deemed supportive of plaintiff's standing. If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed."); *Friends of Tims Ford v. TVA*, 585 F.3d 955, 965 (6th Cir. 2009) (same).

### C. Metro admitted that SW Nashville's claims were ripe

In connection with their motions to dismiss, Metro agreed that the case was ripe. Specifically, Metro argued before the district court that this action presented a ripe determination on the merits, whose statute of limitations had since expired.[6] *Memo. of Law of Appellee's Metro and Planning, RE 25, Page ID # 109–114; Memo. of Law of Appellee Kempf, RE 27, Page ID # 123*; *Hensley v. City of Columbus*, 557 F.3d 693, 696 (6th Cir. 2009) (the statute of limitations begins to run when the takings claim is ripe). Metro stated that a final government decision was made in June or July 2022. *Memo. of Law, RE 25, Page ID # 112–113; Memo. of Law, RE 27, Page ID # 123*. In the Sixth Circuit, this "deliberate, clear and unambiguous" attorney's statement can be qualified as an admission. *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340 (6th Cir.

---

[6] The district court did not decide the statute of limitations issue. *Memorandum Decision, RE 45, Page ID # 277, 282*. Regardless, Metro's actions are a continuing violation that tolled the statute of limitations. *See, e.g.*, *Hensley*, 557 F.3d at 697 (A "continuous violation exists if: (1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiffs accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided."). Metro's actions are also analogous to a rolling moratorium. *See Tahoe-Sierra Pres. Council, Inc.*, 535 U.S. at 333 (endorsing the possibility that "rolling moratoria" could be "the functional equivalent of a permanent taking").

1997); *Borror Prop. Mgmt., LLC v. Oro Karric N., LLC*, 979 F.3d 491, 495 (6th Cir. 2020) ("Once litigation commences, a party typically is bound by its action, whether it be a statement in a pleading, an admission during discovery, or an argument to the court by its counsel.") (cleaned up).

## II. The District Court's Ripeness Determination Must Be Reversed

The district court held that SW Nashville's claims were not jurisdictionally ripe.[7] *Memorandum Decision, RE 45, Page ID # 292.* Although development has been prohibited indefinitely, the court reasoned that "there has been no final decision in this case—the plaintiff's Application is on hold." *Id.*, *at Page ID # 288.* And "it remains entirely unclear whether Metro will, in fact, deny plaintiff's Application and institute condemnation proceedings or, instead, resituate the

[7] The district court stated that "jurisdictional ripeness appears to be at issue." *Memorandum Decision, RE 45, Page ID # 292.* While it also recognized the distinction between jurisdictional and prudential ripeness and the oft confusion between the two, *ibid.*, the court did not evaluate the prudential ripeness factors. *Memorandum Decision, RE 45, Page ID # 284–93*; *compare with Yellen*, 112 F.4th at 401 ("Prudential ripeness is concerned with (1) whether a claim is fit for judicial review; and (2) the hardship to the parties.").

projected roadway and grant the Application." *Id., at Page ID # 292.* The decision was in error and must be reversed.

A. Metro made a final decision

When the district court decided that an as-of-right, but indefinitely "on hold," permit application was not a final decision, it made two related errors. First, it gave dispositive status to the "on hold" label that it used to describe Metro's actions and then largely ignored the actions themselves. In other words, for the district court, the fact that the permit applications were on hold was all the information it needed to decide that SW Nashville's claims were not ripe. *Memorandum Decision, RE 45, Page ID # 288, et seq.*

But the "label can mislead," *Cedar Point Nursery*, 594 U.S. at 149, and takings claims are about what the government *does*, not the name that is affixed to that action. *See Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 713–14 (2010) ("The Takings Clause . . . is concerned simply with the act[.]"); *San Diego Gas & Elec. Co. v. City of San Diego*, 450 U.S. 621, 652–53 (1981) (Brennan, J., dissenting) ("[T]he Constitution measures a taking of property not by what a State says, or by what it intends, but by what it does.").

Similarly, the ripeness determination is not about the classification of SW Nashville's permits as "on hold," or "deferred," or something else, but whether "there is no question about how the regulations at issue apply to the particular land in question." *Pakdel*, 594 U.S. at 478. For example, if a discretionary permit application is put on hold for two or three days while a plan examiner is out sick, that is decidedly different than an as-of right permit application that is put on hold so that the government can prohibit the development outright.

In making its ripeness determination, the district court erred in failing to examine Metro's decision that led to the "on hold" label. SW Nashville's as-of right development has been prohibited for an indefinite period of time. *SAC, RE 44, Page ID # 260; Mendes Letter, RE 13-1, Page ID # 75; Kempf Letter, RE 24-2, Page ID # 103; Planning emails, RE 24-1, Page ID # 100–01.* No development can be constructed, SW Nashville's as-of-right development will not be allowed, and the property shall remain economically idle unless and until Metro says otherwise in their unilateral discretion.

Second, in characterizing SW Nashville's permit application as "on hold," the district also gave substantial weight to the fact that Metro

could one day rescind its decision. *Memorandum Decision, RE 45, Page ID # 289, 292*. However, that improperly bypasses several important considerations.

When Metro placed the permit applications on hold indefinitely, that was a final decision for ripeness purposes. As stated above, Metro clearly and unequivocally decided that SW Nashville cannot proceed with the as-of-right development of its property and there are no actions that SW Nashville can take to change that decision other than to file a lawsuit.

Nor is there any guarantee that Metro will ever rescind the development prohibition. It is indefinite and has persisted from June 2022 to date. As the district court found, "Metro's position in that regard has never changed," *Memorandum Decision, RE 45, Page ID # 289*, and "it remains entirely unclear" what Metro will do. *Id., at Page ID # 292.*

And even Metro does someday rescind the development prohibition, that has no impact on whether SW Nashville has a ripe claim for adjudication. Any future action by Metro does not erase or excuse Metro's land banking, or the 41 months and continuing that SW Nashville's private property has been forcibly left undeveloped and without any

economic use. SW Nashville has suffered a concrete injury now as the direct result of Metro's clear decision to impose an indefinite prohibition. *SAC, RE 44, Page ID # 259, 261, 263, 265; Mendes Letter, RE 13-1, Page ID # 75–76.*

Accordingly, the government's potential voluntary cessation does not unripen events that have already occurred. *Walling v. Helmerich & Payne*, 323 U.S. 37, 43 (1944) ("Voluntary discontinuance of an alleged illegal activity does not operate to remove a case from the ambit of judicial power."). Or as the Supreme Court said in *Knick*, "a bank robber might give the loot back, but he still robbed the bank." 588 U.S. at 193. Therefore, the district court cannot "disallow[] damages that occurred prior to the ultimate invalidation of the challenged regulation." *First English*, 482 U.S. at 317.

Certainly, "the government may elect to abandon its intrusion or discontinue regulations." *Ibid.* But that subsequent act does not deprive the property owner of a constitutional claim. Rather, the government's recission of its regulatory action simply changes the taking from permanent to temporary. *Id.* at 318. And "[t]emporary takings which . . . deny a landowner all use of his property, are not different in kind from

permanent takings, for which the Constitution clearly requires compensation." *Ibid.*, adopting the reasoning of Justice Brennan's dissent in *San Diego Gas*, 450 U.S. at 657 (Brennan, J., dissenting) ("The fact that a regulatory taking may be temporary, by virtue of the government's power to rescind or amend the regulation, does not make it any less of a constitutional taking."); *ibid.* ("Nor does the temporary reversible quality of a regulatory taking render compensation for the time of the taking any less obligatory."). In fact, the North Carolina Supreme Court recently held that an indefinite prohibition on development, later rescinded by the government, was equal to a permanent taking. *See Mata v. N. Carolina Dep't of Transp.*, No. 217PA24-1, 2025 WL 3560052, at *5, 2025 N.C. LEXIS 1075, at *12–13 (N.C. Dec. 12, 2025).

If the district court's contrarian decision were to be adopted, it would have substantial prejudicial consequences to constitutional property rights claims. All the government would have to do is place a permit application "on hold" and then leave it there: the takings and due process claims could never ripen, temporary takings as described in *First English* would not be possible, and the owner would be perpetually barred from the courthouse doors. That gives the government far too

much power and it is not the law. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 439 n.17 (1982) (property rights "cannot be so easily manipulated"); *Horne*, 576 U.S. at 362 ("The broad power of the government must be consistent with the letter and spirit of the constitution. As Justice Holmes noted, 'a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way.'") (internal citations omitted) (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 416 (1922)).

Considering the above, while liability has yet to be determined, SW Nashville is entitled to its day in court. Metro has made the decision to prohibit all development on SW Nashville's property for an indefinite period of time. As the court below found "Metro's decision has never changed," *Memorandum Decision, RE 45, Page ID # 289*, Metro has unilateral control over its refusal to process or review SW Nashville's permit applications, and there is nothing more that SW Nashville can do. Its only options are to litigate or to remain subject to Metro's decision and hope that (a) Metro someday lifts the indefinite permit hold and (b) SW Nashville does not go bankrupt before that day ever comes, if it does. The district court erred in holding that the case is not ripe for adjudication.

*See, e.g.*, *T&W Holding Co., L.L.C. v. City of Kemah, Texas*, No. 24-40679, 2025 WL 3248185, at *4, 2025 U.S. App. LEXIS 30667, at *10, (5th Cir. Nov. 21, 2025) (a prohibition on occupancy, though temporary and conditional, was de facto ripe because "the City reached a sufficiently final position" and the instant it was ordered, "plaintiffs lost all economic use of the building"); *Cienega Gardens v. United States*, 67 Fed. Cl. 434, 461 (2005), *vacated on other grounds*, 503 F.3d 1266 (Fed. Cir. 2007) ("[T]he fifteen-month period cited by the government as a reasonable waiting period" for a government decision as to whether its funding action will be permanent or temporary, "is not at all a necessary prerequisite for a ripe takings claim, but rather is merely a relevant factor in determining the end date of a temporary taking."); *Clayland Farm Enters. v. Talbot Cnty.*, 672 F. App'x 240, 244 n.6. 245 (4th Cir. 2016) (facial regulatory taking, and procedural and substantive due process claims, challenging "indefinite moratorium without any post-deprivation remedy" are ripe); *Marusic Liquors, Inc. v. Daley*, 55 F.3d 258, 261 (7th Cir. 1995) (A moratorium on the transfer of liquor licenses presented a ripe constitutional property claim because the cognizable injury was present now, even though the owner may not try to sell until

the future. "The ordinance itself embodies a conclusive decision about transferability. True, it is an open question whether, and if so when, Marusic will try to sell the store. Yet the ordinance has immediate effects . . . ."); *Corn v. City of Lauderdale Lakes*, 816 F.2d 1514, 1516 (11th Cir. 1987) ("Finality is manifested by a showing that there is no beneficial use to which the property may be put. . . . Since the subject ordinances called for a complete moratorium on Corn's development of his property, any request for a variance would plainly have been futile."); *State ex rel. AWMS Water Sols., L.L.C. v. Mertz*, 162 Ohio St. 3d 400, 409–10 (Ohio 2020) (a two year moratorium upon a permit to operate saltwater injection wells presented a ripe claim); *see also Skull Valley Band of Goshute Indians v. Nielson*, 376 F.3d 1223, 1238 (10th Cir. 2004) (in the context of a licensing case and prudential ripeness, finding that future contingencies do not render a case unripe for review).

B. The cases relied upon by the district court are not applicable

When the district court issued its sua sponte March 2025 opinion, the court did not have the benefit of briefing or argument by either party on the issue of ripeness. Consequently, the legal underpinnings of its decision are inapposite. Many of the cases that the district court relied

upon evaluated the merits of the plaintiff's claims based upon whether the government's delay in deciding was "ordinary" or "extraordinary." *Memorandum Decision, RE 45, Page ID # 289–92*. But in this case, there was no "delay." A decision was made and a development prohibition was imposed. Moreover, a determination on the merits only happens if the controversy is ripe for determination in the first place. Therefore, these cases do not support the district court's decision here.

Likewise, the court also cited cases pertaining to SW Nashville's statute of limitations argument, and then improperly criticized those cases for not supporting ripeness. *Id., at Page ID # 288–89*. But again, one is independent of the other, and arguments about the statute of limitations are premised on the existence of a ripe claim.

### C. The district court failed to address Metro's alleged lack of authority to prohibit development

In its Second Amended Complaint, SW Nashville alleged that Metro did not take required steps to enact an "official moratorium," nor did Metro have the legal or statutory authority to refuse to process or review an as-of-right permit that was fully compliant with the zoning code. *SAC, ER 44, Page ID # 261–62, 264–66*. Impermissible government actions cannot provide the valid public purpose that is necessary to take

private property, *see, e.g.*, *Kelo v. City of New London, Conn.*, 545 U.S. 469 (2005), nor can they justify the government's denial of substantive due process. *Father Ryan High Sch., Inc.*, 774 S.W.2d at 189. This issue was not addressed by the district court. *Memorandum Decision, RE 45, Page ID # 282, and generally.* Consequently, with no finding or determination that Metro possessed the legal or statutory authority to take the actions it did, the district court's decision must be reversed. In other words, once the government takes actions that are outside the bounds of its authority, claims based upon those actions are ripe for determination.

## Conclusion

Appellant SW Nashville EB Owner, LLC respectfully requests that this Court reverse (1) the district court's dismissal of Appellant's unconstitutional regulatory takings cause of action under the Fifth Amendment and the Tennessee Constitution, and (2) the district court's dismissal of Appellant's substantive due process and procedural due process causes of action under the Fourteenth Amendment; and remand this matter to the district court for further proceedings, together with

such other and further relief as the Court deems reasonable, proper, and just.

DATED: December 23, 2025.

Respectfully submitted,

s/ Jonathan M. Houghton

Jonathan M. Houghton
Bridget F. Conlan
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
(202) 888-6881
JHoughton@pacificlegal.org
BConlan@pacificlegal.org

W. Scott Sims
R. Mark Donnell, Jr.
Sims Funk, PLC
3102 West End Ave., Suite 1100
Nashville, TN 37203
(615) 292-9335
ssims@simsfunk.com
mdonnell@simsfunk.com

Luke J. Ellis *
Zev Kusin
Marrs Ellis & Hodge LLP
809 West 12th Street
Austin, Texas 78701
lellis@mehlaw.com
zkusin@mehlaw.com

* Admission pending.

*Attorneys for Plaintiff-Appellant*

**Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements**

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(c) and 6 Cir. R. 32 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

[X] this document contains 8,169 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

[X] this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14 point,

By: s/ Jonathan M. Houghton
Jonathan M. Houghton
*Attorney for Plaintiffs-Appellants*

**Certificate of Service**

I hereby certify that on December 23, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

By: s/ Jonathan M. Houghton
Jonathan M. Houghton
*Attorney for Plaintiffs-Appellants*

## Designation of Relevant Documents

| Docket Entry | Document Name | Page ID # |
|---|---|---|
| RE 1 | *Notice of Removal* | *1–19* |
| RE 13-1 | *October 13, 2022 letter to Bob Mendes* | *74–76* |
| RE 24-2 | *June 2022 emails to, and from, Metro Planning Department* | *99–101* |
| RE 24-2 | *July 26, 2022 letter to Lucy Kempf* | *102–05* |
| RE 44 | *Second Amended Complaint (SAC)* | *257–68* |
| RE 45 | *Memorandum Decision* | *269–94* |
| RE 47 | *Entry of Judgment* | *297* |
| RE 52 | *Order Denying Reconsideration* | *333–35* |
| RE 53 | *Notice of Appeal* | *336–37* |