No. 25-5781

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

SW NASHVILLE EB OWNER, LLC

Plaintiff-Appellant

v.

METROPOLITAN GOVERNMENT OF NASHVILLE & DAVIDSON COUNTY, TN; LUCY KEMPF, Executive Director of the Metropolitan Nashville-Davidson County Planning Dept

Defendants-Appellees

---

# BRIEF OF APPELLEES METRO NASHVILLE AND LUCY KEMPF

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY
WALLACE W. DIETZ, DIRECTOR OF LAW

ALLISON L. BUSSELL
ASSOCIATE DIRECTOR OF LAW
PETER G. VIZCARRONDO
ASSISTANT METROPOLITAN ATTORNEY
P.O. Box 196300
Nashville, Tennessee 37219
(615) 862-6341

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Sixth Circuit Rule 26.1, Appellees Metropolitan Government of Nashville and Davidson County and Lucy Kempf make the following disclosures:

1. Are said parties a subsidiary or affiliate of a publicly owned corporation? No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? No.

Dated: February 23, 2026

/s/ *Allison L. Bussell*
Allison L. Bussell

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........ ii

TABLE OF CONTENTS ........ iii

TABLE OF AUTHORITIES ........ v

STATEMENT REGARDING ORAL ARGUMENT ........ 1

STATEMENT OF JURISDICTION ........ 2

STATEMENT OF THE ISSUES ........ 4

STATEMENT OF THE CASE ........ 5

STANDARD OF REVIEW ........ 10

SUMMARY OF THE ARGUMENT ........ 10

ARGUMENT ........ 13

I. THE TRIAL COURT PROPERLY HELD THAT PLAINTIFF'S TAKINGS AND DUE PROCESS CLAIMS ARE UNRIPE ........ 13

A. Ripeness in this Context Examines Whether the Government Has Issued a Final Decision Regarding the Regulations' Applicability to Plaintiff's Property ........ 14

B. Plaintiff's Unsupported Factual Assertions and Inapposite, Non-Controlling Case Citations Do Not Satisfy the Finality Requirement ........ 17

1. *Plaintiff's inapposite caselaw* ........ 19

2. *Plaintiff's mischaracterized assertions* ........ 24

C. Plaintiff Has Not Argued, Much Less Established, Extraordinary Delay to Justify an Exception to the Ripeness Requirement ........ 25

II. IF RIPE, PLAINTIFF'S TAKINGS AND DUE PROCESS CLAIMS ARE TIME-BARRED ........ 29

A. Plaintiff's Takings and Due Process Claims Are Subject to a One-Year Statute of Limitations .................... 31

B. Under Plaintiff's Theory, the One-Year Statute of Limitations on Plaintiff's Takings and Due Process Claims Started Running, at the Latest, on July 26, 2022 .................... 32

C. The Continuing Violations Doctrine, Equitable Estoppel, and Extraordinary Delay Do Not Excuse Plaintiff's Untimeliness .................... 36

*1. Continuing violations doctrine* .................... 37

*2. Equitable estoppel* .................... 40

*3. Extraordinary delay* .................... 43

III. EVEN IF PLAINTIFF'S DUE PROCESS CLAIMS ARE RIPE, PLAINTIFF HAS NOT ALLEGED A CLEARLY ESTABLISHED DUE PROCESS VIOLATION AGAINST DEFENDANT LUCY KEMPF .................... 45

CONCLUSION .................... 48

CERTIFICATE OF COMPLIANCE .................... 50

CERTIFICATE OF SERVICE .................... 51

ADDENDUM .................... 52

# TABLE OF AUTHORITIES


*Accord v. Anderson Cnty., Tenn.*, No. 3:21-CV-00077, 2022 WL 610826 (M.D. Tenn. Mar. 1, 2022) .......... 33

*Agins v. City of Tiburon*, 447 U.S. 255 (1980) .......... 26, 27, 28

*Aloisi v. United States*, 85 Fed. Cl. 84 (2008) .......... 26, 28, 45

*Alsbrook v. Concorde Career Colls., Inc.*, 469 F. Supp. 3d 805, (W.D. Tenn. 2020) .......... 40, 41, 43

*Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 839 F.3d 458 (6th Cir. 2016) .......... 34

*Ammex, Inc. v. Cox*, 351 F.3d 697 (6th Cir. 2003) .......... 10

*Appolo Fuels, Inc. v. United States*, 381 F.3d 1338 (Fed. Cir. 2004) .......... 26, 44

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) .......... 46, 47, 48

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 41

*B & B Enters. of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d 839 (Tenn. 2010) .......... 32

*Bass Enters. Co. v. United States*, 381 F.3d 1360 (Fed. Cir. 2004) .......... 28

*Billingsley v. Doe #1*, No. 21-6023, 2022 WL 4088511 (6th Cir. Sept. 7, 2022) .......... 41, 42

*Bledsoe Cnty. v. McReynolds*, 703 S.W.2d 123 (Tenn. 1985) .......... 40

*Boise Cascade Corp. v. United States*, 296 F.3d 1339 (Fed. Cir. 2002) .......... 19, 20, 26

*Bray v. Bon Secours Mercy Health, Inc.*, 97 F.4th 403 (6th Cir. 2024) .......... 10

*Brousseau v. Haugen*, 543 U.S 194 (2004). .......... 46

*Brown v. Tidwell*, 169 F.3d 330 (6th Cir. 1999) .......... 29

*Caudill v. Hollan*, 431 F.3d 900 (6th Cir. 2005) .......... 46

*City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600 (2015) .......... 46

*Cox v. City of Jackson, Tenn.*, 811 F. App'x 284 (6th Cir. 2020) .......... 33

*Decker v. Citrus Cnty.*, 183 F. Supp. 3d 1203 (M.D. Fla. 2016) .......... 26

*Dubuc v. Twp. of Green Oak*, 406 F. App'x 983 (6th Cir. 2011) .......... 15

*EEOC v. Ferrellgas, L.P.*, 97 F.4th 338 (6th Cir. 2024) .......... 29, 36

*Eidson v. Tenn. Dep't of Child.'s Servs.*, 510 F.3d 631 (6th Cir. 2007) .......... 31, 32, 34, 37, 38

*First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., California*, 482 U.S. 304 (1987) .......... 26, 27

*Guba v. Huron Cnty.*, 600 F. App'x 374 (6th Cir. 2015) .......... 39

*Hardcastle v. Harris*, 170 S.W.3d 67 (Tenn. Ct. App. 2004) .......... 40

*Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671 (6th Cir. 2001) .......... 10

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .......... 46

*In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455 (6th Cir. 2014) .......... 6

*Insomnia Inc. v. City of Memphis, Tenn.*, 278 F. App'x 609 (6th Cir. 2008) .......... 14, 16

*Kentucky Press Ass'n v. Kentucky*, 454 F.3d 505 (6th Cir. 2006) .......... 14

*Kirby v. N.C. Dep't of Transp.*, 769 S.E.2d 218 (N.C. Ct. App. 2015) .......... 22, 23

*Kirby v. N.C. Department of Transportation*, 786 S.E.2d 919 (N.C. 2016).......... 22, 23

*Knick v. Twp. of Scott, Penn.*, 588 U.S. 180 (2019).......... 9, 10, 16, 33, 37

*Kuhnle Bros., Inc. v. City of Geauga*, 103 F.3d 516 (6th Cir. 1997) .......... 39

*Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005).......... 11, 27

*Little v. City of Chattanooga*, No. E2018-00870-COA-R3-CV, 2019 WL 1308264 (Tenn. Ct. App. Mar. 21, 2019).......... 32

*Lopez v. TVA*, No. 3:16-CV-287, 2016 WL 3951880 (M.D. Tenn. July 22, 2016).......... 42, 43

*Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992) .......... 30, 34

*LXR RS V, LLC v. Mun. of Norristown*, No. 2:19-cv-01397-JDW, 2019 WL 5930157, (E.D. Pa. Oct. 7, 2019) .......... 28, 44

*MacDonald, Sommer & Frates v. Yolo Cnty.*, 477 U.S. 340 (1986) .......... 19

*McNamara v. City of Rittman*, 473 F.3d 633 (6th Cir. 2007).......... 39

*Meeks v. Larsen*, 611 F. App'x 277 (6th Cir. 2015) .......... 46

*Miles Christi Religious Ord. v. Twp. of Northville*, 629 F.3d 533 (6th Cir. 2010) .......... 15, 16

*Nance v. City of Albemarle, N.C.*, 520 F. Supp. 3d 758 (M.D.N.C. 2021).......... 44

*Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991) .......... 34

*Ohio Midland, Inc. v. Ohio Dep't of Transp*, 286 F. App'x 905 (6th Cir. 2008) .......... 38

*Paduch v. City of Johnson City*, 896 S.W.2d 767 (Tenn. 1985) .......... 40

*Peters v. Fair*, 427 F.3d 1035 (6th Cir. 2005) .......... 16

*Phillips v. Montgomery Cnty.*, 442 S.W.3d 233 (Tenn. 2014) .......... 11

*Pinnacle Bank as Trustee of Ransom Fam. Tr. v. Fid. & Deposit Co. of Md.*, 598 F. Supp. 3d 666 (M.D. Tenn. 2022) .......... 32

*Plumhoff v. Rickard*, 572 U.S. 765 (2014) .......... 47

*Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436 (Tenn. 2012) .......... 33

*Res. Invs., Inc. v. United States*, 85 Fed. Cl. 447 (2009) .......... 26, 45

*Richmond Road Partners, LLC v. City of Warrensville Heights*, No. 24-3502, 2025 WL 737342 (6th Cir. Mar. 7, 2025) .......... 27

*Riveredge Dentistry P'ship v. City of Cleveland*, No. 1:22-CV-1007, 2024 WL 639689 (N.D. Ohio Feb. 15, 2024) .......... 38

*Saucier v. Katz*, 533 U.S. 194 (2001) .......... 46

*Shahan v. Franklin Cnty.*, No. M2002-725-COA-R3-CV, 2003 WL 23093836 (Tenn. Ct. App. Dec. 30, 2003) .......... 40, 41

*Sharpe v. Cureton*, 319 F.3d 259 (6th Cir. 2003) .......... 37

*Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249 (6th Cir. 2014) .......... 37

*Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022) .......... 6

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 911 F.2d 1331 (9th Cir. 1990) ........................................................ 21

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 938 F.2d 153 (9th Cir. 1991) ................................................... 20, 21

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302 (2002) ........................................................ 21, 29, 30

*Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934 (6th Cir. 1999) ............................................................................ 37, 38

*United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121 (1985) ........................................................................................ 19

*Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985)........... *passim*

*Wilson v. Layne*, 526 U.S. 603 (1999).................................................... 48

*Wyatt v. United States*, 271 F.3d 1090 (Fed. Cir. 2001) ....... 26, 28, 44, 45

<u>Statutes and Rules</u>

28 U.S.C. § 1291 ........................................................................... 3

28 U.S.C. § 1331 ........................................................................... 2

42 U.S.C. § 1983 ................................................................... *passim*

Tenn. Code Ann. § 12-1-206 ......................................................... 32, 34

Tenn. Code Ann. § 28-3-104 .............................................................. 31

Tenn. Code Ann. § 29-16-123 ............................................................. 32

Tenn. Code Ann. § 29-16-124 ............................................................. 32

N.C.G.S. §§ 136–44.50........................................................................ 22

Fed. R. Civ. P. 12 ............................................................................. 10

## STATEMENT REGARDING ORAL ARGUMENT

The Trial Court applied well-settled principles of law to grant Defendants-Appellees' motions to dismiss. Plaintiff-Appellant did not satisfy basic pleading requirements for its Tennessee constitutional claims and federal equal protection claims and has not appealed their dismissal. (*See* Order of Dismissal ¶¶ 1–2, RE 46, PageID # 295.)

The question of whether the Trial Court should have dismissed Plaintiff-Appellant's takings and due process claims *on ripeness grounds*—the issue that Plaintiff-Appellant appeals—is an interesting one. But whether the claims should have been dismissed *at all* is crystal clear. If Plaintiff-Appellant's takings and due process claims are ripe, they are also time-barred, as Defendants-Appellees argued in the Trial Court. And this Court may affirm for any reason supported by the record below. Because either path leads to dismissal, oral argument is not necessary to reach the straightforward conclusion that this Court should affirm the judgment in Defendants-Appellees' favor.

## STATEMENT OF JURISDICTION

Plaintiff-Appellant SW Nashville EB Owner, LLC ("Plaintiff") originally filed suit in the Circuit Court for the Twentieth Judicial District, Davidson County. The Complaint asserted causes of action under 42 U.S.C. § 1983 ("Section 1983") for violations of the Fifth and Fourteenth Amendment to the U.S. Constitution. The lawsuit was removed to U.S. District Court for the Middle District of Tennessee, which had jurisdiction pursuant to 28 U.S.C. § 1331, on June 10, 2024. (Notice of Removal, Exhibit 1, and Civil Cover Sheet, RE 1, PageID # 1–19.) Plaintiff's Second Amended Complaint was docketed on October 22, 2024. (Second Am. Compl., RE 44, PageID # 257–68.)

The Trial Court granted Defendant-Appellees Metro Nashville and Lucy Kempf's ("Defendants") motions to dismiss the Second Amended Complaint on March 20, 2025, and entered judgment in Defendants' favor the same day. (Mem., Order, Judgment, RE 45–47, PageID # 269–97.) Plaintiff filed a motion for reconsideration on April 16, 2025, which the Trial Court denied on August 7, 2025. (Mot. for Reconsideration, RE 48, PageID # 298–314; Order Denying Mot. for Reconsideration, RE 52, PageID # 333–35.)

Plaintiff timely filed a Notice of Appeal on September 5, 2025. (Notice of Appeal, RE 53, PageID # 336–37.)

This Court has jurisdiction to hear the appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Did the Trial Court correctly conclude that Plaintiff's takings and due process claims are unripe under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985)?

2. If ripe, are Plaintiff's takings and due process claims time-barred?

3. If Plaintiff's due process claims are ripe, does Plaintiff allege a clearly established due process violation against Defendant Lucy Kempf?

## STATEMENT OF THE CASE

The facts relevant to Plaintiff's appeal are drawn from the Second Amended Complaint.[1] In 2022, Plaintiff purchased a tract of land located at 186 North First Street, Nashville, Tennessee 37213 (the "Property"). (Second Am. Compl. ¶¶ 4, 9, RE 44, PageID # 258.) Shortly thereafter, Plaintiff sought approval to construct a multi-family residential project, which is "permitted by right" in the zoning district (the "Application"). (*Id.* ¶¶ 11, 13, PageID # 259.) Plaintiff expected the Application to be approved within a "reasonable period of time" because it did not anticipate Metro Nashville imposing delays for reasons that the Metro Code of Laws did not authorize. (*Id.* ¶ 14, PageID # 259.)

After starting the development-permitting process, Plaintiff learned of an "indefinite hold" on the Property that paused the Application's review. (*Id.* ¶ 16, PageID # 260.) Plaintiff's property is

---

[1] The motions to dismiss at issue in this appeal sought dismissal of the First Amended Complaint (RE 13). After the motion to dismiss was filed, the Parties filed a proposed order agreeing that Plaintiff's proposed Second Amended Complaint was "substantively identical" to the First Amended Complaint and thus should not moot the pending motion to dismiss. (Proposed Agreed Order, RE 43, PageID # 253–56.) The Court entered the agreed order permitting the amendment, rendering the Second Amended Complaint the operative complaint. (Agreed Order, RE 43, PageID # 253–56.)

located on the "East Bank," an area wherein "Metro Government is working in partnership with the Tennessee Department of Transportation (TDOT) to assess possible routes for a planned major roadway." (*Id.* ¶ 17, PageID # 260.) Plaintiff received an email on June 29, 2022, stating that Metro Nashville "must defer review of building permits on potentially affected properties" pending that assessment. (*Id.*; June 29, 2022, Email, Ex. 1 to Mot. to Dismiss, RE 24-1, PageID # 100.)[2]

On October 13, 2023, one of Plaintiff's partners sent Metro Nashville's then Chief Development Officer Bob Mendes a letter discussing the "redevelopment process on the East Bank," Plaintiff's efforts to "coordinate and accommodate the potential East Bank Boulevard," and some of Plaintiff's interactions with Metro Nashville officials. (Second Am. Compl. ¶ 19, RE 44, PageID #260; Oct. 13, 2023, Letter, Ex. 1 to First Am. Compl., RE 13-1, PageID # 75–76.)[3] The first

---

[2] This Court has "recognized that if a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014), *cited in Smith v. CommonSpirit Health*, 37 F.4th 1160, 1168 (6th Cir. 2022).

[3] When filing the Second Amended Complaint by agreement, which did not moot the motion to dismiss the First Amended Complaint, Plaintiff

page of the letter referenced and purported to attach a July 26, 2022, letter in which one of Plaintiff's attorneys "submitted a formal objection to the Planning Department and Metro Legal on July 26, 2022 stating that a de facto moratorium on development by the Planning Department is illegal." (Oct. 13, 2023, Letter, RE 13-1, PageID # 75.)[4] The July 26, 2022, letter had asserted that Metro Nashville was illegally and improperly "interfering with [Plaintiff's] property rights." (July 26, 2022, Letter, Ex. 2 to Mot. to Dismiss, RE 24-2, PageID # 103.) The letter demanded that Metro Nashville "cease and desist from unlawfully interfering with [Plaintiff's] pursuit of . . . construction permitting." (*Id.*, PageID # 105.)

Plaintiff kept pushing for its Application to be processed and approved. (Second Am. Compl. ¶¶ 18–20, RE 44, PageID # 260–61.) Plaintiff alleges that these efforts were futile because Metro Nashville's

failed to attach Exhibit 1. Because the Second Amended Complaint refers to the exhibit, this was merely an oversight. (Second Am. Compl. ¶ 19, RE 44, PageID # 260.)

[4] The version of the October 13, 2023, letter that Plaintiff filed as Exhibit 1 to its First Amended Complaint (RE 13-1) did not include its July 26, 2022, letter attachment. The July 26, 2022, letter—which Plaintiff cites at page 33 of its brief (digital page-numbering, not the manual page numbering)—was filed as Exhibit 2 to Defendants' motion to dismiss. (RE 24-2.)

deferral of the application, which "has continued to this day," has rendered the property "undevelopable and unsellable—i.e., worthless." (*Id.* ¶ 21, PageID # 261.)

On May 3, 2024, Plaintiff filed suit against Metro Nashville and the Executive Director of Metro Nashville's Planning Department, Lucy Kempf, in Circuit Court for the Twentieth Judicial District, Davidson County. (State Court Compl., RE 1-1, PageID # 6–14.) Defendants removed the case, given the federal claims alleged. (Notice of Removal, RE 1, PageED # 1–2.) Defendants then filed a joint motion to dismiss. (Defs.' Mot. Dismiss & Mem. L., RE 10–11, PageID # 36–60.)

Plaintiff filed an Amended Complaint, which Defendants also moved to dismiss. (Def. Metro Nashville's Mot. Dismiss & Mem. L., RE 24–25, PageID # 96–119; Def. Kempf's Mot. Dismiss & Mem. L., RE 26–27, PageID # 120–132.) The Court later docketed the Second Amended Complaint as the operative complaint after the Parties agreed that it was "substantively identical" to the First Amended Complaint and thus did not moot the pending motions to dismiss. (Proposed Agreed Order, RE 40-1, PageID # 220–24; Agreed Order, RE 43, PageID # 253–56; Second Am. Compl., RE 44, PageID # 257–68.)

On March 20, 2025, the Trial Court issued a memorandum opinion, granting both motions to dismiss. (Mem., RE 45, PageID # 269–94.) The Trial Court dismissed the takings and due process claims on a ground not raised by the parties—holding that the claims were not ripe under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). *See id.* at 186, *overruled on other grounds by Knick v. Twp. of Scott, Penn.*, 588 U.S. 180 (2019) ("As the Court has made clear in several recent decisions, a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.").

Plaintiff filed a motion for reconsideration, arguing, in part, that the Trial Court erred in holding that the takings and due process claims were not ripe. (Mot. for Reconsideration, RE 48, PageID # 298–314.) The Parties addressed ripeness in Plaintiff's motion for reconsideration briefing, and the Trial Court denied the motion. (*Id.*, PageID # 299–306; Defs.' Resp. to Mot. for Reconsideration, RE 50, PageID # 316–21; Pl.'s

Reply (Mot. Reconsideration), RE 51, PageID # 327–29; Order Denying Mot. for Reconsideration, RE 52, PageID # 333–35.) This appeal followed.

## STANDARD OF REVIEW

This Court reviews Plaintiff's only issue presented—ripeness—*de novo*. *Ammex, Inc. v. Cox*, 351 F.3d 697, 706 (6th Cir. 2003). The Court reviews Defendants' additional issues presented in support of the Trial Court's ruling *de novo*, as well. *See Bray v. Bon Secours Mercy Health, Inc.*, 97 F.4th 403, 409–10 (6th Cir. 2024) (noting that a ruling on a 12(b)(6) motion should be reviewed de novo); *Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 677 (6th Cir. 2001) (noting that a ruling on a motion to dismiss on qualified immunity grounds is reviewed *de novo*).

## SUMMARY OF THE ARGUMENT

The Trial Court's dismissal of the claims against Metro Nashville and Lucy Kempf should be affirmed.

The Fifth Amendment does not prohibit the government from taking property; it prohibits the government from taking property without providing just compensation. Under this framework, an inverse condemnation claim is "a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant." *Knick*, 588 U.S. at 186.

"The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). But courts also recognize regulatory takings, that is, "governmental action which diminishes private property rights, but which does not amount to a direct appropriation or physical invasion of private property." *Phillips v. Montgomery Cnty.*, 442 S.W.3d 233, 239 (Tenn. 2014) (citing *Lingle*, 544 U.S. at 637).

Plaintiff alleges a regulatory taking arising from what the Parties agree is an indefinite hold that Metro Nashville placed on Plaintiff's permit Application. The Application has not been denied; it is on pause. And in this context, "indefinite" does not mean "in perpetuity"; rather, development in the general area of Plaintiff's property is merely on hold pending Metro Nashville's consideration of how extensive, upcoming public infrastructure improvements in the area—namely, the East Bank Boulevard—will affect Plaintiff's property.

This type of temporary hold is lawful. Caselaw consistently establishes that a government may delay processing a building application while it works to determine outside factors. Further, while a

delay that becomes "extraordinary" can be an exception to *Williamson County*'s finality requirement, that is not what has occurred here. Nor has Plaintiff argued as much on appeal. And even if Plaintiff had attempted to establish extraordinary delay, Plaintiff alleges no facts to establish bad faith on Metro Nashville's part, which also precludes an extraordinary delay finding. In fact, it is reasonable for a local government to delay consideration of a permit application long enough to consider outside factors, including public infrastructure improvements, and how they will affect Plaintiff's property. The Court should therefore affirm the Trial Court's conclusion that Plaintiff's takings and due process claims are unripe.

If, however, Plaintiff's claims are ripe, they are also time-barred. If the hold on Plaintiff's Application was a final decision sufficient to render the claims ripe, then the claims accrued at the time of the hold (June 2022) or, at the latest, in July 2022 when Plaintiff's attorney asserted that the hold was illegal and interfering with Plaintiff's property rights. Plaintiff did not file suit until more than a year later. Thus, the Trial Court judgment in Defendants' favor should be affirmed on the

alternative ground that Plaintiff's takings and due process claims are time-barred.

Finally, Plaintiff's due process claims against Defendant Lucy Kempf also fail because there is no clearly established law rendering it beyond debate that the hold on Plaintiff's Application violated Plaintiff's substantive or procedural due process rights. Accordingly, even if Plaintiff's due process claims are ripe, the judgment in favor of Kempf should be affirmed on this alternative ground.

## ARGUMENT

### I. THE TRIAL COURT PROPERLY HELD THAT PLAINTIFF'S TAKINGS AND DUE PROCESS CLAIMS ARE UNRIPE.

This Court should affirm the Trial Court's conclusion that Plaintiff's takings and due process claims are unripe. First, though Plaintiff filed a motion to reconsider challenging the Trial Court's ruling that Plaintiff's claims were not ripe, the motion never addressed *Williamson County*'s finality requirement. Plaintiff's attempt to address the issue for the first time here also fails. Courts repeatedly acknowledge that local governments must have flexibility in reviewing development permits for planning purposes. As those cases show, the mere fact that a plaintiff has no action to take to resolve the issue does not mean the

government has made a final decision. Rather, a permit denial is the typical final decision required to ripen a takings claim.

In situations involving delayed review of a permit application, courts examine whether the delay is so extraordinary as to create an exception to the finality requirement. The Trial Court appropriately applied these concepts to hold that Plaintiff's claims are not ripe.

### A. Ripeness in this Context Examines Whether the Government Has Issued a Final Decision Regarding the Regulations' Applicability to Plaintiff's Property.

Ripeness is a justiciability principle "designed to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements."' *Insomnia Inc. v. City of Memphis, Tenn.*, 278 F. App'x 609, 612 (6th Cir. 2008) (quoting *Kentucky Press Ass'n v. Kentucky*, 454 F.3d 505, 509 (6th Cir. 2006)). The general ripeness inquiry has three components: "(1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings." *Id.* at 612 (cleaned up).

The Supreme Court, however, has "articulated a more specific formulation of ripeness for cases involving the alleged taking of a property interest." *Id.* "For a plaintiff to successfully advance a claim that governmental action amounts to a regulatory taking, the governmental entity charged with implementing the regulations must have reached *a final decision* regarding the application of the regulations to the property at issue." *Id.* (citation omitted) (cleaned up) (emphasis added); *see also Dubuc v. Twp. of Green Oak*, 406 F. App'x 983, 990 (6th Cir. 2011) ("The Supreme Court broadened [the general] ripeness inquiry in cases alleging a taking of a property interest by first requiring that the government entity have reached a final decision regarding the interest at issue."); *Miles Christi Religious Ord. v. Twp. of Northville*, 629 F.3d 533, 537 (6th Cir. 2010) ("In the land-use context, the demands of 'a concrete factual context' and 'a dispute that is likely to come to pass' converge in an insistence on 'finality,' an insistence that the relevant administrative agency resolve the appropriate application of the zoning ordinance to the property in dispute.").

It is unclear whether the finality requirement *supplants* the traditional ripeness inquiry or is *an additional element*. *Compare*

*Insomnia*, 278 F. App'x at 612 (referring to finality as a "more specific formulation" of the general ripeness test), *with Miles Christi*, 629 F.3d at 537 (describing the test as a "convergence" of elements and analyzing finality alongside general ripeness). Regardless, the finality requirement is essential and longstanding. *See Williamson Cnty.*, 473 U.S. at 186 ("As the Court has made clear in several recent decisions, a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."). And though *Knick* overruled *Williamson County*'s rule that a takings claim is not ripe before a plaintiff exhausts state court remedies, it left the finality requirement intact. *Knick*, 588 U.S. at 187–88. The Parties agree that the finality requirement also applies to Plaintiff's due process claims. (Pl.'s Br. at 27[5] (citing *Peters v. Fair*, 427 F.3d 1035, 1037 (6th Cir. 2005) ("Similarly, claims for violations of substantive due process and

---

[5] Citations to Plaintiff's brief are to the automated page numbers in the filestamp, not to the manual page numbers.

procedural due process claims ancillary to a takings claim are also subject to this ripeness requirement.”)).)

### B. Plaintiff's Unsupported Factual Assertions and Inapposite, Non-Controlling Case Citations Do Not Satisfy the Finality Requirement.

In challenging the Trial Court's finding that Plaintiff's takings and due process claims are unripe, Plaintiff argues that Metro Nashville's “indefinite development prohibition . . . was a de facto final decision” and that “the Court knows how far the government's regulatory action goes.” (Pl.'s Br. at 17.) Plaintiff is incorrect, both regarding the facts it cites to support that theory and the applicable law.

First, Plaintiff inaccurately frames the issue. Plaintiff asserts that the Trial Court dismissed the takings and due process claims on ripeness grounds “without the benefit of briefing or argument” (*id.* at 37). This is, at best, misleading. The Trial Court did not consider the bulk of the argument Plaintiff presents here because *Plaintiff did not present it below*. To explain, Plaintiff asked the Trial Court to revise its decision on ripeness—but not for the reasons asserted in this appeal. In its Motion to Reconsider, Plaintiff did not address finality *at all*. Instead, Plaintiff argued only that it was injured by the permit hold and that the Court

had no authority to issue a prudential ripeness ruling *sua sponte*. (Mot. for Reconsideration, RE 48, PageID # 299–304.) The Trial Court properly rejected those arguments. (Order on Mot. for Reconsideration, RE 52, PageID # 334 ("First, the plaintiff's Motion to Reconsider makes no effort to address the finality requirement that applies to takings claims, which the court analyzed exhaustively in the Memorandum dismissing the plaintiff's claims. Second, it is well established that, 'even in a case raising only prudential concerns, the question of ripeness may be considered on a court's own motion.'").)

Here, Plaintiff pivots. It first argues that the hold constitutes a final decision. (*See* Pl.'s Br. at 41 ("When Metro placed the permit applications on hold indefinitely, that was a final decision for ripeness purposes.").) Plaintiff cites myriad cases, most of which merely outline *general* principles relevant to ripeness and none of which address the *specific* issue here. (*See* Pl.'s Br. at 41.) And second, Plaintiff mischaracterizes the facts, improperly attempting to supplement the complaint through argument and suggesting nefarious conduct that simply is not alleged. Neither effort saves the claims.

*1. Plaintiff's inapposite caselaw.*

"[T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury . . . ." *Williamson Cnty.*, 473 U.S. at 193. "Until a property owner has 'obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property,' 'it is impossible to tell whether the land retain[s] any reasonable beneficial use or whether [existing] expectation interests ha[ve] been destroyed.'" *MacDonald, Sommer & Frates v. Yolo Cnty.*, 477 U.S. 340, 349 (1986) (quoting *Williamson Cnty.*, 473 U.S. at 190 n.11).

In *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121 (1985), the Supreme Court noted that "[o]nly when a permit is denied and the effect of the denial is to prevent 'economically viable' use of the land in question can it be said that a taking has occurred." *Id.* at 127. Some courts have applied this concept to hold that mere delays on a permit application—absent "extraordinary delay"—are not ripe under *Williamson County*. *E.g.*, *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1347 (Fed. Cir. 2002) ("Thus, *Riverside Bayview* supports the proposition that Boise cannot bring a takings claim because the Service

never denied Boise's permit.") (collecting cases); *see also id.* at 1352 ("This does not affect the longstanding rule that, absent denial of a permit, only extraordinary delays in the permitting process ripen into a compensable taking.").

The Trial Court properly reasoned that a final decision has not been made as to Plaintiff's Application, rendering Plaintiff's takings claim unripe. Metro Nashville has not addressed Plaintiff's Application; it is on hold. That hold is not a final decision—it is a delayed decision. This Court should therefore affirm the Trial Court's conclusion that the finality requirement is not satisfied here.[6]

Contrary to Plaintiff's assertion (Pl.'s Br. at 36), *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 938 F.2d 153 (9th Cir. 1991) ("*TSPC II*"), does not alter this outcome. There, the Ninth Circuit Court of Appeals addressed an ordinance establishing a temporary moratorium (of specified duration) on development in a

[6] For the reasons outlined in Section C to follow, Plaintiff likewise cannot establish extraordinary delay, so the finality exception referenced in *Boise Cascade* is not triggered here. *See Boise Cascade*, 296 F.3d at 1352 ("This does not affect the longstanding rule that, absent denial of a permit, only extraordinary delays in the permitting process ripen into a compensable taking.").

geographic area located partly in Nevada and partly in California. *Id.* at 155. In *TSPC I*, the Ninth Circuit had dismissed some of the Nevada plaintiffs' claims as unripe because the plaintiffs had "not availed themselves of a short-term mechanism for case-by-case approval of development." *TSPC II*, 938 F.2d at 156 (citing *TSPC I*, 911 F.2d 1331 (9th Cir. 1990)). The court held that the California plaintiffs' claims, by contrast, were ripe because those plaintiffs did not have a review mechanism like the one available to the Nevada plaintiffs. *Id.* at 156.[7]

The *Tahoe-Sierra* line of cases does not establish that Plaintiff's claims are ripe. The *Tahoe-Sierra* court reviewed an ordinance establishing a moratorium of specified duration and with specified processes—facts that are significantly more suggestive of finality than the informal hold alleged in Plaintiff's complaint. And Plaintiff cites no case holding that an indefinite hold on a permit application is a final decision for ripeness purposes. In fact, taking Plaintiff's argument to its

[7] The United States Supreme Court granted certiorari in *Tahoe-Sierra* but did not address the ripeness question. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302 (2002). But if, as Plaintiff seems to suggest, a formal moratorium would have satisfied the finality requirement, and if the hold alleged here is the equivalent of a formal moratorium, (Pl.'s Br. at 45–46), then Plaintiff's claim ripened in June 2022 and is time-barred, as argued in Section II below.

logical conclusion would eliminate the finality requirement altogether in cases where development was delayed, regardless of how briefly. That is not the law.

Plaintiff's effort to liken this case to *Kirby v. N.C. Department of Transportation* ("*Kirby II*"), 786 S.E.2d 919 (N.C. 2016), also falls flat. First, *Kirby II* addressed a North Carolina inverse condemnation claim under the North Carolina Takings Clause, not the federal Takings Clause. *See Kirby v. N.C. Dep't of Transp.* ("*Kirby I*"), 769 S.E.2d 218, 227 (N.C. Ct. App. 2015). And second, the statutory scheme challenged in *Kirby* bears little resemblance to the facts alleged here.

*Kirby II* examined a North Carolina statutory scheme called the Roadway Corridor Official Map Act ("Map Act"), codified as amended at N.C.G.S. §§ 136–44.50. *Kirby II*, 786 S.E.2d at 921. Via the Map Act, the North Carolina Department of Transportation ("NCDOT") could freeze development in a particular area by filing proposed highway corridor maps with the county register of deeds. *Id.* The filing of such maps immediately and indefinitely imposed certain restrictions on any property located within the corridor. *Id.* From 1996 to 2012, NCDOT

acquired at least 454 properties in a transportation corridor for a specified project. *Kirby I*, 769 S.E.2d at 235.

Notably, the Map Act permitted indefinite holds on property development even without any active development plans in place. *Id.* at 232. As the *Kirby II* court recognized, "[j]ustifying the exercise of governmental power in this way would allow the State to hinder property rights indefinitely for a project *that may never be built*." *Kirby II*, 786 S.E.2d at 925.

Nothing of the sort is alleged here. Plaintiff has not alleged that Metro Nashville arbitrarily identified Plaintiff's property and has no concrete plans to develop infrastructure in the area. Nor could Plaintiff, given the contemporaneous negotiations for property acquisition, as discussed in Section II.B.2. below. In short, there is a material difference between a city identifying properties it "might" need to acquire and taking no steps whatsoever toward that goal—which the Map Act would have permitted—and the facts alleged in this case. *Kirby II* has no application here.

### 2. *Plaintiff's mischaracterized assertions.*

Plaintiff's arguments on appeal also rely heavily on unsupported, hyperbolic *assertions*, not *allegations*. There are no allegations in the Second Amended Complaint that Plaintiff's property is the only property affected by a permit hold relating to East Bank development. (Pl.'s Br. at 33 ("The prohibition was not area-wide but specific to this property.").) In fact, that is *counter* to Paragraph 17 of the Second Amended Complaint, which the Trial Court properly recognized. (Mem., RE 45, PageID #282 n.5 ("This statement—referring to other 'potentially affected properties'—suggests that similarly situated property owners in the same vicinity *were* being treated the same as the plaintiff.").)

Plaintiff's assertion that Metro Nashville is "land banking" is equally specious. (Pl.'s Br. at 33 ("Instead, Metro used their municipal power for land banking."); *see also id.* at 21 ("It does not take much effort to see that Metro is land banking SW Nashville's property.").) These unsupported assertions are contained nowhere in the complaint and thus are irrelevant to the issues before the Court.

Finally, Plaintiff's suggestion that it is completely in the dark concerning Metro Nashville's plans for its property are both irrelevant

and inaccurate. (*See, e.g.*, Pl.'s Br. at 21 ("There is no certainty about the use of eminent domain: if, when, and for what portion of SW Nashville's property are all unknown.").) This unsupported assertion, again, falls outside the pleadings and thus has no bearing on this appeal. But the assertion is also concerning, substantively. Plaintiff is in active negotiations with Metro Nashville for acquisition of a specified portion of Plaintiff's property for the purpose of building East Bank Boulevard, as referenced in Exhibit 1 to the First Amended Complaint (RE 13-1, PageID # 75). Metro Nashville made its first offer in 2024, a mediation occurred last month (in lieu of Metro Nashville pursuing eminent domain), and those negotiations continue. While it is unclear whether Plaintiff's suggestion to the contrary was an intentional misrepresentation or merely a misunderstanding between counsel and client, the Court should nevertheless disregard it.

### C. Plaintiff Has Not Argued, Much Less Established, Extraordinary Delay to Justify an Exception to the Ripeness Requirement.

A line of cases from the Federal Court of Claims, and other cases adopting the same reasoning, formed the basis for the Trial Court's ruling that a final decision had not been made on Plaintiff's Application. Those

opinions examine ripeness in the context of a delay or hold on development by asking whether the delay was "extraordinary." *See, e.g.*, *Appolo Fuels, Inc. v. United States*, 381 F.3d 1338, 1351–52 (Fed. Cir. 2004); *Boise Cascade*, 296 F.3d at 1352; *Decker v. Citrus Cnty.*, 183 F. Supp. 3d 1203, 1208 (M.D. Fla. 2016); *see also Res. Invs., Inc. v. United States*, 85 Fed. Cl. 447, 493 (2009) ("The precept of 'extraordinary delay' is thus an exception to the general ripeness rule."). They also generally require a showing of bad faith to establish an extraordinary delay. *See, e.g.*, *Wyatt v. United States*, 271 F.3d 1090, 1098 (Fed. Cir. 2001); *Aloisi v. United States*, 85 Fed. Cl. 84, 93 (2008); *see also Res. Invs.*, 85 Fed. Cl. at 498 ("[O]nly in rare circumstances can delay be extraordinary without a finding of bad faith on the part of the government.") (citing *Wyatt*, 271 F.3d at 1098). Moreover, a "[v]iolation of a regulation is not *per se* evidence of bad faith sufficient to overcome the government's presumption of good faith." *Aloisi*, 85 Fed. Cl. at 97.

Extraordinary delay may also be relevant to whether a taking has occurred at all—it is relevant both to ripeness and the merits of a takings claim. *See, e.g.*, *First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., California*, 482 U.S. 304, 320 (1987) (quoting *Agins v.*

*City of Tiburon*, 447 U.S. 255, 263 n.9 (1980)*, abrogated on other grounds in Lingle*, 544 U.S. 528, ("*Agins* likewise rejected a claim that the city's preliminary activities constituted a taking, saying that '[m]ere fluctuations in value during the process of governmental decisionmaking, absent extraordinary delay, are incidents of ownership.'") (cleaned up). This Court, in fact, has examined extraordinary delay when examining the merits of a takings claim. *See Richmond Road Partners, LLC v. City of Warrensville Heights*, No. 24-3502, 2025 WL 737342 (6th Cir. Mar. 7, 2025).

The Trial Court properly examined extraordinary delay as part of its ripeness inquiry. And Plaintiff offers no persuasive argument why the Court should not do so here. Instead, Plaintiff first takes a "sky-is-falling" approach: "All the government would have to do is place a permit application 'on hold' and then leave it there: the takings and due process claims could never ripen, temporary takings as described in *First English* would not be possible, and the owner would be perpetually barred from the courthouse doors." (Pl.'s Br. at 43.) This parade of horribles ignores the legal standard that the cases cited above apply in this context and that the Trial Court applied here. Nothing in existing law suggests, nor

have Defendants asserted, that a local government could preclude review of a permit application in perpetuity, forever precluding judicial review.

Regardless, Plaintiff has not attempted to establish extraordinary delay as an exception to ripeness and has waived any argument that it exists here. Should Plaintiff attempt to prove extraordinary delay in its reply,[8] however, the attempt will be unsuccessful. Courts have held eight-year, seven-year, thirty-two month, eighteen-month, and sixteen-month delays not to be extraordinary. *See LXR RS V, LLC v. Mun. of Norristown*, No. 2:19-cv-01397-JDW, 2019 WL 5930157, at *4 (E.D. Pa. Oct. 7, 2019) (collecting cases). But the mere passage of time does not dictate whether a delay is "extraordinary." *Bass Enters. Co. v. United States*, 381 F.3d 1360, 1366 (Fed. Cir. 2004). "Because delay is inherent in complex regulatory permitting schemes, [courts] must examine the nature of the permitting process as well as the reasons for any delay." *Wyatt*, 271 F.3d at 1098; *Aloisi*, 85 Fed. Cl. at 93; *see also Agins*, 447 U.S. at 263 n.9; Mem., RE 45, PageID # 286–87.

[8] In the Trial Court, Plaintiff argued extraordinary delay in response to Defendants' statute of limitations argument. (Pl.'s Resp. to Mot. to Dismiss, RE 30, PageID # 144–45.) Even if the Court were to graft that one-paragraph argument onto the ripeness context here, it fails for the reasons outlined here and in Section II.C. below.

Nor has Plaintiff established bad faith on Metro Nashville's part sufficient to invoke the exception. (*See* Mem., RE 45, PageID # 291 (concluding that "the facts as alleged . . . do not suggest bad faith on the part of Metro").) It is reasonable for Metro Nashville to pause permitting in the area directly affected by East Bank development until the plans are more final. Because Plaintiff has not established extraordinary delay or that the finality requirement is otherwise satisfied, the Court should affirm.

## II. IF RIPE, PLAINTIFF'S TAKINGS AND DUE PROCESS CLAIMS ARE TIME-BARRED.

This Court "'can affirm a decision of the district court on any grounds supported by the record, even if different from those relied on by the district court.'" *EEOC v. Ferrellgas, L.P.*, 97 F.4th 338, 350 (6th Cir. 2024) (quoting *Brown v. Tidwell*, 169 F.3d 330, 332 (6th Cir. 1999)). Even if the Court were to conclude that Plaintiff's takings and due process claims are ripe, they are time-barred. The Trial Court can be affirmed for this alternative reason.

The U.S. Supreme Court has recognized two types of regulatory takings: total and partial. *Tahoe-Sierra*, 535 U.S. at 330. A total regulatory taking occurs when the property owner has been denied "all

viable economic use of [its] property." *Id.* at 320. Like a direct physical invasion or appropriation of property by the government, this is a per se taking subject to the categorical rule that the government must pay the property owner compensation without further analysis. *Id.* (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1017, 1019–20 (1992)); *see also Lucas*, 505 U.S. at 1019 ("[W]hen the owner of real property has been called upon to sacrifice all economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking.").

Here, Plaintiff alleged a total regulatory taking. According to the Second Amended Complaint, Metro Nashville's deferral "render[ed] the Property undevelopable and unsellable—i.e., worthless—for the duration of the hold," (Second Am. Compl. ¶ 21, RE 44, PageID # 261), and denied Plaintiff of "all economically beneficial use of the Property, rendering it worthless for the duration of the permit 'hold' and the entirety of Plaintiff's period of ownership to date" (*id.* ¶ 37, PageID # 265). Because Defendants perceived this as an attempt to plead a *Lucas*-style taking, Defendants did not initially rely on the ripeness doctrine. *See Tahoe-Sierra*, 535 U.S. at 329 ("The categorical rule that we applied in *Lucas*

states that compensation is required when a regulation deprives an owner of 'all economically beneficial uses of his land."). Instead, if the Court agrees with Plaintiff that a taking occurred *when the hold was placed on the property*,[9] then Plaintiff's claim accrued more than one year before Plaintiff filed suit, rendering the claim time-barred.

### A. **Plaintiff's Takings and Due Process Claims Are Subject to a One-Year Statute of Limitations.**

Plaintiff's federal takings and due process claims in this case proceed pursuant to Section 1983. (Second Am. Compl. ¶ 38 (Count I), ¶ 43 (Count II), ¶ 49 (Count III), RE 44, PageID # 264–66.) An action under Section 1983 is subject to the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). In Tennessee, the limitations period for "[c]ivil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes" is one year. Tenn. Code Ann. § 28-3-104(a)(1)(b).

---

[9] (*See, e.g.*, Pl.'s Resp. to Mot. to Dismiss, RE 30, PageID # 144 ("Owner believes Metro's permitting delay was impermissible from the outset."); Pl.'s Br. at 41 (stating that the hold is "indefinite and has persisted from June 2022 to date").)

The state-law inverse condemnation claim is also subject to a one-year statute of limitations. Under Tennessee law, "[a]n owner of private property shall commence any proceedings claiming a government action is an unconstitutional taking within the same limitation of actions period as provided in § 29-16-124 for actions commenced pursuant to § 29-16-123." Tenn. Code Ann. § 12-1-206. The statute of limitations for both physical and regulatory takings is one year. Tenn. Code Ann. § 29-16-124; *see also Little v. City of Chattanooga*, No. E2018-00870-COA-R3-CV, 2019 WL 1308264, at *11 (Tenn. Ct. App. Mar. 21, 2019) (quoting *B & B Enters. of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d 839, 846 (Tenn. 2010)) ("Although [Tenn. Code Ann. § 29-16-124] is couched in terms of physical takings, it applies equally to all takings claims.").

### B. Under Plaintiff's Theory, the One-Year Statute of Limitations on Plaintiff's Takings and Due Process Claims Began Running, at the Latest, on July 26, 2022.

For Section 1983 claims, federal law determines when the statute of limitations begins to run. *Eidson*, 510 F.3d at 635. For state-law claims, state law determines when the statute of limitations begins to run. *Pinnacle Bank as Trustee of Ransom Fam. Tr. v. Fid. & Deposit Co. of Md.*, 598 F. Supp. 3d 666, 671, n.3 (M.D. Tenn. 2022).

Under both federal and state law, a statute of limitations begins to run when "not only when the plaintiff has actual knowledge of a claim, but also when the plaintiff has actual knowledge of facts sufficient to put a reasonable person on notice that he or she has suffered an injury as a result of wrongful conduct." *Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 459 (Tenn. 2012) (cleaned up); *Accord v. Anderson Cnty., Tenn.*, No. 3:21-CV-00077, 2022 WL 610826, at *6 (M.D. Tenn. Mar. 1, 2022) (stating that a claim under Section 1983 accrues when "the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, both his injury and the responsible party") (quoting *Cox v. City of Jackson, Tenn.*, 811 F. App'x 284, 288 (6th Cir. 2020)).

In the takings context, "[a] property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Knick*, 588 U.S. at 185; *see also B & B Enters.*, 318 S.W.3d at 846 ("The triggering event for the running of the statute of limitations is simply the date the landowner knew that the government was depriving it of the economic use of its property." (cleaned up)). A total regulatory taking occurs as soon as government action renders the

property worthless. *Lucas*, 505 U.S. at 1030 (explaining that a total regulatory taking requiring compensation occurs when the regulatory action "declares 'off-limits' all economically productive or beneficial uses of land . . ."). This means that Plaintiff's takings claims began to run, at the latest, when it knew of the injury about which it complains.

So true for Plaintiff's due process claims. *See Eidson*, 510 F.3d at 634 (applying the state personal injury statute of limitations to Section 1983 claims); Tenn. Code Ann. § 12-1-206. In the procedural due process context specifically, claims have been described as accruing "at the time that process was denied because 'the allegedly infirm process is an injury in itself.'" *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 839 F.3d 458, 461 (6th Cir. 2016) (quoting *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 894 (6th Cir. 1991)). Further, "a plaintiff has reason to know of its procedural-due-process claim at the moment process is denied." *Id.*

According to Plaintiff, its property was declared "off-limits" for economically beneficial use when its permit application was deferred. (Second Am. Compl. ¶¶ 21, 27, 37, RE 44, PageID # 261, 263, 265.) Plaintiff knew the Application was deferred—which Plaintiff alleges

rendered the entire Property "worthless"—on June 29, 2022. (*Id.*; *see also id.* ¶ 17; June 29, 2022, Email, RE 24-1, PageID # 100.) And Plaintiff alleges that the June 29, 2022, email was sent *after* Plaintiff had already been "informed by [Metro Nashville] that a Planning Commission staff member had put an indefinite 'hold' on the Property that prohibited review of the Application." (Second Am. Compl. ¶¶ 16–17, RE 44, PageID # 260.) Indeed, Plaintiff has argued unequivocally both at the motion to dismiss stage and here that its injury began when the hold was placed on its property. (*See, e.g.*, Pl.'s Resp. to Mot. to Dismiss, RE 30, PageID # 144 ("Owner believes Metro's permitting delay was impermissible from the outset."); Pl.'s Br. at 41 (stating that the hold is "indefinite and has persisted from June 2022 to date").) Plaintiff filed its original Complaint on May 3, 2024, nearly two years later. (State Court Compl., RE 1-1, PageID # 6–14.)

But even if Plaintiff's claim did not accrue until July 26, 2022, when Plaintiff's attorney sent a demand letter asserting that the hold was illegal and interfering with Plaintiff's property rights, (July 26, 2022, Letter, RE 24-2, PageID # 103), the claims are still time-barred. Plaintiff concedes actual knowledge of an injury and its source at least by July 26,

2022. As a result, the statute of limitations for Plaintiff's takings and due process claims expired, at the latest, on July 26, 2023. Plaintiff filed its original Complaint nearly ten months later. (State Court Compl., RE 1-1, PageID # 6–14.) Plaintiff's takings and due process claims in Counts I, II, and III are thus time-barred. The Court may affirm the Trial Court on this alternative ground. *Ferrellgas*, 97 F.4th at 350.

Finally, the Trial Court did not address Defendants' argument that Plaintiff's substantive due process claim failed as merely a restatement of Plaintiff's takings claim. (*See* Mem. L. Support Metro Mot. to Dismiss, RE 25, PageID # 116; Mem. L. Support Kempf Mot. to Dismiss, RE 27, PageID # 127 (adopting and incorporating reasoning in RE 25).) Rather, the Trial Court dismissed Plaintiff's due process claims as unripe. (Mem., RE 45, PageID # 269.) Should the Court disagree with that holding, it should affirm the Trial Court judgment in Defendants' favor on the substantive due process claim as duplicative of the takings claim.

### C. The Continuing Violation Doctrine, Equitable Estoppel, and Extraordinary Delay Do Not Excuse Plaintiff's Untimeliness.

Though not raised in Plaintiff's opening brief, Plaintiff cited the continuing violations doctrine, equitable estoppel, and extraordinary

delay as purportedly saving Plaintiff's untimely filing in response to Defendants' statute-of-limitations argument at the motion-to-dismiss stage. (Pl.'s Resp. to Mot. to Dismiss, RE 30, PageID # 141–45.) None of these theories carry the day.

*1. Continuing violations doctrine.*

The Sixth Circuit "employs the continuing violations doctrine most commonly in Title VII cases, and rarely extends it to § 1983 actions." *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003); *see also Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 257 (6th Cir. 2014) ("Courts have been 'extremely reluctant' to extend the continuing-violation doctrine beyond the context of Title VII[.]" (internal citations omitted)). Moreover, Plaintiff has not pleaded any continuing violation.

A "continuing violation is occasioned by continual unlawful acts, *not continual ill effects* from an original violation." *Eidson* (quoting *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999) (emphasis added)). A takings claim accrues when the property is taken. *Knick*, 588 U.S. at 185 ("[T]he property owner has suffered a violation of his Fifth Amendment rights when the government takes his property

without just compensation, and therefore may bring his claim in federal court under § 1983 at that time.”).

Plaintiff’s takings and due process claims are based on a decision to defer the Application, which Plaintiff contends was “impermissible from the outset” (Pl.’s Resp. to Mot. to Dismiss, RE 30, PageID # 144), rendered the property “worthless,” and “has continued to this day.” (Second Am. Compl. ¶ 21, RE 44, PageID # 261.) That Metro Nashville maintained the deferral despite Plaintiff’s demands to reverse course (*id.* ¶ 18, PageID # 260) does not establish a continuing violation because “[p]assive inaction does not support a continuing violation theory.” *Eidson*, 510 F.3d at 635. Further, continuous *harm*, which is what Plaintiff alleges, does not establish a continuing *violation*. *Eidson*, 510 F.3d at 635; *Tolbert*, 172 F.3d at 940; *see also Riveredge Dentistry P’ship v. City of Cleveland*, No. 1:22-CV-1007, 2024 WL 639689, at *18 (N.D. Ohio Feb. 15, 2024) (“ . . . Plaintiffs cannot merely point to the continuing, resulting harm.”). Were the Court to accept the “theory that a taking is continuous until it is reversed, then all takings would constitute ‘continuing violations,’ tolling the statute of limitations . . . This is not the law.” *Ohio Midland, Inc. v. Ohio Dep’t of Transp*, 286 F. App’x 905, 912 (6th Cir. 2008).

The cases that Plaintiff referenced in response to Defendants' motions to dismiss do not save the claims. (Pl.'s Resp. to Mot. to Dismiss, RE 30, PageID # 141.) First, *Guba v. Huron Cnty.*, 600 F. App'x 374 (6th Cir. 2015), did not consider or apply the continuing-violations doctrine to a takings claim, nor did the single case it cites in dicta. *Id.* at 380 (citing *McNamara v. City of Rittman*, 473 F.3d 633, 639 (6th Cir. 2007)). Further, the case Plaintiff cites to support this theory for substantive due process—*Kuhnle Bros., Inc. v. City of Geauga*, 103 F.3d 516 (6th Cir. 1997)—cuts against it. Here, Plaintiff's claim is based on the alleged deprivation of a *property* interest. In *Kuhnle Bros.*, the Sixth Circuit held that a substantive due process claim based on a *property interest was time-barred* and not subject to the continuing violation theory because any deprivation occurred when the resolution was adopted that effectuated the taking of property. *Id.* at 521.[10] Further, the *Kuhlne Brothers* Court did not address the continuing violation doctrine in the context of procedural due process at all, though it stated that any such claim would also be time-barred. *Id.* n.5.

---

[10] By contrast, *Kuhnle Bros.* applied the continuing violation doctrine to the plaintiff's due process claim based on a *liberty* interest. 103 F.3d at 521–22.

*2. Equitable estoppel.*

"Estoppels are not favored in Tennessee." *Alsbrook v. Concorde Career Colls., Inc.*, 469 F. Supp. 3d 805, 842 (W.D. Tenn. 2020) (citing *Hardcastle v. Harris*, 170 S.W.3d 67, 84 (Tenn. Ct. App. 2004)). And "except for 'very exceptional circumstances,' the doctrine does not apply to government actions." *Shahan v. Franklin Cnty.*, No. M2002-725-COA-R3-CV, 2003 WL 23093836, at *4 (Tenn. Ct. App. Dec. 30, 2003) (quoting *Bledsoe Cnty. v. McReynolds*, 703 S.W.2d 123, 124 (Tenn. 1985)). "[I]n those Tennessee cases where estoppel was applied, or could have been applied, the public body took affirmative action that clearly induced a private party to act to his or her detriment, as distinguished from silence, non-action or acquiescence." *Paduch v. City of Johnson City*, 896 S.W.2d 767, 772–73 (Tenn. 1985). Further, "Tennessee courts have declined to apply the equitable estoppel exception where defendants have made representations[11] or taken actions during continuing negotiations between the parties that do not rise to the level of specific inducements to delay suit." *Alsbrook*, 469 F. Supp. 3d at 842 (collecting cases)

[11] *Shahan*, 2003 WL 23093836, at *4 ("Parties who deal with government officials are presumed to know the limits of the official's authority.").

(declining to apply equitable estoppel to "representations that are neither about the possibility of litigation nor about any specific, articulated claim for payment" and where the plaintiffs failed to identify "specific representations designed to induce them not to file a timely suit").

Plaintiff's response to Defendants' motion to dismiss cited Paragraphs 18, 20, and 28 of the complaint as supporting equitable estoppel. (Pl.'s Resp. to Mot. to Dismiss, RE 30, PageID # 143–44.) But the complaint falls short. Both Paragraph 28 and the allegations in Paragraph 18 that Metro Nashville "induc[ed] Plaintiff not to act" are conclusory recitations of equitable estoppel—which the Court is not "bound to accept as true." *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). All that Plaintiff alleges in these paragraphs is that Metro Nashville advised that it was continuing to work on the problem, would act imminently, and that Plaintiff should "be patient." (Second Am. Compl. ¶¶ 18, 28, RE 44, PageID # 260, 263.) But asking a developer to have patience during a complex land development process is simply not the type of inducement contemplated in cases like *Alsbrook* and *Shahan*.

Plaintiff's main support for its argument at the motion-to-dismiss stage, *Billingsley v. Doe #1*, No. 21-6023, 2022 WL 4088511 (6th Cir.

Sept. 7, 2022), does not save the claim. Under *Billingsley*, where it is apparent from a complaint that the statute of limitations has expired, a "plaintiff must affirmatively plead why the violations were not discovered earlier and why the statute of limitations should be tolled." *Id.* at *5. While the *Billingsley* court found that the plaintiff had met this requirement,[12] the case bears no relation to this one. There, the court identified allegations that the city "deliberately and purposefully" took actions to avoid a lawsuit. *Id.* at *5. This was not, as Plaintiff suggested, based only on the city having "'slow-walked' the processing of [a] citizen complaint." (Pl.'s Resp. to Mot. to Dismiss, RE 30, PageID # 143.) Rather, the holding was based on the city's alleged motivation "to conceal from Plaintiff the date his cause of action accrued." *Billingsley* at *6.[13]

---

[12] *Billingsley* did not "h[o]ld that equitable estoppel applied," as Plaintiff argued below (Pl.'s Resp. to Mot. to Dismiss, RE 30, PageID # 143). *See* 2022 WL 4088511, at *6 ("Ultimately, Plaintiff may or may not be able to meet this burden . . . .").

[13] Plaintiff also understated the circumstances under which a Middle District of Tennessee district court applied equitable estoppel in *Lopez v. TVA*, No. 3:16-CV-287, 2016 WL 3951880 (M.D. Tenn. July 22, 2016). There, the court noted:

> [T]he following alleged actions could have reasonably misled Mr. Lopez to believe that his claim was being handled as an *administrative claim* by TVA and that it was proper to postpone filing suit *until a final agency decision had been reached*: 1) TVA's acceptance, without comment or

No such motivation is alleged here, nor has Plaintiff alleged facts to establish that Metro Nashville induced Plaintiff not to file suit. *See Alsbrook*, 469 F. Supp.3d at 842 ("The Court will not extend the equitable estoppel exception further than the Tennessee courts have. Plaintiffs have not established that [Defendant] made specific representations designed to induce them not to file a timely suit."). Plaintiff cannot establish equitable estoppel.

*3. Extraordinary delay.*

Plaintiff has consistently argued that the hold on its Application was impermissible at the outset. (Pl.'s Resp. to Mot. to Dismiss, RE 30, PageID #144; Second Am. Compl. ¶¶ 27, 37, RE 44, PageID # 263, 265.) It argued only in the alternative in response to Defendants' motions to dismiss—in one conclusory paragraph—that Plaintiff's "claims accrued—

---

> clarification, of Mr. Lopez's Standard Form 95 for *administrative claims* under the FTCA; 2) TVA's assignment of a lawyer as a point of contact for "the claim;" 3) TVA's subsequent requests for medical records and additional information (that Mr. Lopez might not have been willing to share, had he known there was no *administrative claim process* for personal injury claims against TVA); and 4) TVA's failure to correct Mr. Lopez's repeated express assumption that the *claim was being brought pursuant to the administrative exhaustion requirements* of the FTCA.

*Id.* at *5 (emphasis added).

and the limitations clock began to run—only after the delay went from permissible to unreasonable/extraordinary." (Pl.'s Resp. to Mot. to Dismiss, RE 30, PageID #144.) Plaintiff neither stated when that occurred nor established how the requirements for extraordinary delay are satisfied.

Moreover, just as with ripeness, the facts in the Second Amended Complaint do not support an extraordinary delay theory. Plaintiff alleged a delay of less than two years from the date it learned of the hold (June 2022) through the date it filed this lawsuit (May 2024). (Second Am. Compl. ¶¶ 16–17, RE 44, PageID # 260; June 29, 2022, Email, Ex. 1 to Mot. to Dismiss, RE 24-1, PageID # 100.) Again, "several courts have held that much longer delays are not extraordinary." *LXR RS V*, 2019 WL 4930157, at *4 (citing *Williamson Cnty.*, 473 U.S. 172 (1985) (eight-year delay); *Wyatt*, 271 F.3d at 1098–1100 (six-year delay); *see also Appolo Fuels*, 381 F.3d at 1351 (describing eighteen-month delay as "far short of extraordinary")); *Nance v. City of Albemarle, N.C.*, 520 F. Supp. 3d 758, 800 (M.D.N.C. 2021) (describing a "delay of roughly 22 months [a]s far shorter than the periods of delay that other courts found were not extraordinary").

Further, Plaintiff acknowledges the complexity behind the deferral: ". . . Metro Government is working in partnership with [TDOT] to assess possible routes for a planned major roadway in the vicinity of [the] property." (Second Am. Compl. ¶ 17, RE 44, PageID # 260.) And Plaintiff cannot establish bad faith on Metro Nashville's part for its need to plan for such complex infrastructure. *See Res. Invs.*, 85 Fed. Cl. at 498 ("[O]nly in rare circumstances can delay be extraordinary without a finding of bad faith on the part of the government.") (citing *Wyatt*, 271 F.3d at 1098); *Aloisi*, 85 Fed. Cl. at 97 (noting that a "[v]iolation of a regulation is not *per se* evidence of bad faith sufficient to overcome the government's presumption of good faith"). Plaintiff's bare bones attempt to establish extraordinary delay should be rejected.

## III. EVEN IF PLAINTIFF'S DUE PROCESS CLAIMS ARE RIPE, PLAINTIFF HAS NOT ALLEGED A CLEARLY ESTABLISHED DUE PROCESS VIOLATION AGAINST DEFENDANT LUCY KEMPF.

If this Court concludes that Plaintiff's due process claims are ripe, the Trial Court's judgment in Defendant Lucy Kempf's favor should nevertheless be affirmed because she is entitled to qualified immunity.

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions are shielded from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caudill v. Hollan*, 431 F.3d 900, 911 (6th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "After a defendant raises the defense in the first instance, the burden shifts to the plaintiff to demonstrate that the government official violated a right so clearly established that every reasonable official would have understood that what he [was] doing violate[d] that right." *Meeks v. Larsen*, 611 F. App'x 277, 282 (6th Cir. 2015) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

"Rights at issue must be clearly established, not just in the abstract sense, but in a particularized sense." *Caudill*, 431 F.3d at 912 (citing *Brousseau v. Haugen*, 543 U.S 194 (2004)). In fact, the Supreme Court has repeatedly cautioned courts that clearly established law cannot be defined at a high level of generality. *E.g.*, *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015) (citations omitted). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brousseau*, 543 U.S at 198 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). And "existing precedent must have

placed the . . . constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. That is, "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that *any reasonable official in the defendant's shoes* would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014) (emphasis added).

Plaintiff only asserted equal protection and due process claims against Ms. Kempf individually. (Second Am. Compl. ¶ 3, RE 44, PageID # 258.) Plaintiff has not appealed the Trial Court's grant of Defendants' motion to dismiss the equal protection claim. Thus, only substantive and procedural due process claims against Ms. Kempf are at issue at this stage. Ms. Kempf is entitled to qualified immunity on both claims.

First, the substantive due process claim against Ms. Kempf is duplicative of Plaintiff's takings claim and fails for the reasons addressed in Sections II.B. and C. above. Moreover, Plaintiff has not cited any controlling legal authority establishing that the permit hold alleged here violates Plaintiff's substantive or procedural due process rights. Indeed, to defeat a claim of qualified immunity, a plaintiff must identify controlling authority or "a robust 'consensus of cases of persuasive

authority'" arising under sufficiently similar circumstances to render it "beyond debate" that the facts at issue violate the law. *al-Kidd*, 563 U.S. at 741, 742 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). Plaintiff falls far short of that high bar here, having identified no case, controlling or otherwise, to have put Ms. Kempf on notice that the facts alleged against her violate the law.

As addressed in Section I.B.1. above, not only does Plaintiff overstate *Kirby*'s similarity to Plaintiff's permit hold, but it is a North Carolina Supreme Court case addressing the takings clause in the North Carolina Constitution, which has no bearing on the constitutional issues here. It certainly does not qualify as the "robust consensus" requirement necessary to have put Ms. Kempf on notice that she could be individually liable under the circumstances alleged in this case.

Because Ms. Kempf did not violate clearly established law, she is entitled to qualified immunity and dismissal from this case—even if the Court were to conclude that the due process claims against her are ripe.

## CONCLUSION

Whether because its claims are not ripe, as the Trial Court held, or because they are time-barred and not clearly established constitutional

violations, Plaintiff's claims were properly dismissed. This Court should affirm.

Dated: February 23, 2026

Respectfully submitted,

DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY
WALLACE W. DIETZ

/s/ *Allison L. Bussell*
ALLISON L. BUSSELL
PETER G. VIZCARRONDO
108 Metropolitan Courthouse
P.O. Box 196300
Nashville, Tennessee 37219
(615) 862-6341
allison.bussell@nashville.gov
peter.vizcarrondo@nashville.gov

*Counsel for Defendants-Appellees Metro Nashville and Lucy Kempf*

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing document complies with the word limit of Fed. R. App. P. 32(a)(7)(B), excluding the parts of the document exempted by Fed. R. App. P. 32(f), and it contains 9,689 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared using Century Schoolbook 14-point type in Microsoft Word for Office 365.

/s/ *Allison L. Bussell*
Allison L. Bussell

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served via the Court's electronic filing system to the following on the 23rd day of February, 2026:

W. Scott Sims
R. Mark Donnell, Jr.
Sims Funk, PLC
3102 West End Ave., Suite 1100
Nashville, TN 37203

Jonathan M. Houghton
Bridget Conlan
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201

/s/ *Allison L. Bussell*
Allison L. Bussell

# ADDENDUM

## DESIGNATION OF CITED DISTRICT COURT DOCUMENTS (WITHIN THE ELECTRONIC RECORD)

| RE No. | Title | PageID # Range |
|---|---|---|
| 1 | Notice of Removal | 1–2 |
| 1-1 | State Court Complaint | 6–14 |
| 10 | Defs.' Motion to Dismiss | 36–38 |
| 11 | Memorandum of Law in Support of Defs.' Motion to Dismiss | 46–60 |
| 13 | First Amended Complaint | 63–73 |
| 13-1 | Oct. 13, 2023 Letter | 74–76 |
| 24 | Def. Metro Nashville's Motion to Dismiss First Amended Complaint | 96–98 |
| 24-1 | June 29, 2022, Email | 99–101 |
| 24-2 | July 26, 2022, Letter | 102–105 |
| 25 | Memorandum of Law in Support of Def. Metro Nashville's Motion to Dismiss First Amended Complaint | 106–119 |
| 26 | Def. Kempf's Motion to Dismiss First Amended Complaint | 120–122 |
| 30 | Pl.'s Response to Motions to Dismiss | 136–155 |
| 40-1 | Proposed Agreed Order | 220–224 |
| 42 | Second Amended Complaint | 238–249 |
| 42-1 | Oct. 13, 2023, Letter | 250–252 |
| 45 | Memorandum | 269–294 |

| | | |
|---|---|---|
| 46 | Order of Dismissal | 295–296 |
| 47 | Entry Judgment | 297 |
| 48 | Motion for Reconsideration | 298–314 |
| 50 | Defs.' Response to Motion for Reconsideration | 316–326 |
| 51 | Pl.'s Reply Motion for Reconsideration | 327–332 |
| 52 | Order Denying Motion for Reconsideration | 333–335 |